DAVIS TILLSON *vs.* LEVI M. ROBBINS.

Knox. Decided June 7, 1878.

*Libel.*

There is a well settled distinction between written or printed and mere verbal slander in respect to its actionable character. Much, which if spoken would not be actionable without averment of extrinsic facts or allegation and proof of special damage, when written or printed is in itself a substantial cause of action.

In a suit for libel in a newspaper, though no special damage is alleged, and no averment of such extrinsic facts as might be requisite to make the article published import a charge of crime against the plaintiff are made, the action is nevertheless maintainable if the published matter is such as, if believed, would naturally tend to expose the plaintiff to public hatred, contempt or ridicule, or deprive him of the benefits of public confidence and social intercourse.

The defendant published in a newspaper the following words: " The Hurricane Vote. Again we have to chronicle most atrocious corruption, intimidation and fraud in the Hurricane island vote, for which Davis Tillson is without doubt responsible, as he was last year." *Held,* that the publication was actionable without extrinsic averments to communicate its precise import, and without any allegation of special damage.

ON EXCEPTIONS by the defendant to the overruling of his demurrer to the declaration.

LIBEL, in two counts, for words printed in a newspaper, the Rockland Opinion, September 15, 1876. The first count declares for a libel against the plaintiff as an individual, in these words : " The Hurricane Vote. Again we have to chronicle most atrocious corruption, intimidation and fraud in the Hurricane island vote, for which Davis Tillson is without doubt responsible, as he was last year."

The second count declares for a " libel of and concerning the plaintiff in his business" of merchant and contractor in the same words with these added : " Hurricane island is all owned by Davis Tillson, an intense partisan and unscrupulous politician. It is leased to government and contains quarries from which is taken granite for public buildings. This granite is bought by government of Tillson, and is there cut by men who receive about $3.50 per day. On all expenditures Tillson has a gratuity of 15 per

cent, for which he renders no equivalent, unless the lease of the island and its facilities be deemed such."

The declaration, omitting the first and formal part, alleges the publication in the " Rockland Opinion, containing therein the false, scandalous, defamatory and opprobrious matter following of and concerning the said Davis Tillson ; that is to say," and proceeds as follows : ·

" ' The Hurricane Vote. Again we have to chronicle most atrocious corruption, intimidation and fraud in the Hurricane island vote, [meaning the vote given at the election, September 11, 1876] for which Davis Tillson [meaning the plaintiff] is without doubt responsible, as he [meaning the plaintiff] was last year.' Meaning and intending thereby to say and convey to the public mind the impression that the said Davis Tillson had been proved guilty a year ago of the crime of corruption, intimidation and fraud, and further meaning and insinuating thereby that said Davis Tillson, before the time of writing and publishing of the said libel, had been guilty of the base and atrocious crimes of corruption, intimidation and fraud, at the election, held on that island on the eleventh day of September, A. D. 1876, in which the inhabitants of said island, in the town of Vinalhaven, gave their votes for a member of congress, governor, a senator in the state legislature, county officers, and a representative to the legislature. And the said defendant thereafterward on the same day caused to be sent and delivered through the mail and otherwise the libel aforesaid," etc.

The second count is similar, in its innuendoes and in its want of averments and colloquium, to the first count.

The presiding justice overruled the defendant's demurrer to the declaration; and the defendant alleged exceptions.

*A. P. Gould & J. E. Moore,* for the defendant.

I. Unless the words set out as libelous are in themselves actionable without any reference to other matters, the declaration is bad. In such action there should be averment, colloquium and innuendo : averment, to make certain what is generally or doubtfully expressed ; colloquium, to show that the words were in

reference to the matter of the averment; innuendo, as explanatory of the subject matter, sufficiently expressed before, and of such matter only. *Sturtevant* v. *Root*, 27 N. H. 69, 73. *Van Vechten* v. *Hopkins*, 5 Johns, 211, 219. *Patterson* v. *Wilkinson*, 55 Maine, 42. *Carter* v. *Andrews*, 16 Pick. 1. *York* v. *Johnson*, 116 Mass. 482, 485, 486. *Emery* v. *Prescott*, 54 Maine, 389, 392, and cases. *Small* v. *Clewley*, 60 Maine, 262. *Brown* v. *Brown*, 14 Maine, 317. *Snell* v. *Snow*, 13 Met. 278, 282.

The recital by way of innuendo that the defendant intended to charge the plaintiff with the crime of intimidating voters at a state or national election is *nil*, the declaration containing no averment of such election, nor that Hurricane island is a voting precinct, or within the jurisdiction of the United States.

Nor is there any colloquium that the words were used in reference to any such vote or election, if any had been averred.

The second count says the defendant did write and publish a certain "libel of and concerning the plaintiff, in his business aforesaid," but does not say that the words set out are of that character, but that the paper in which the libel was published "contained therein this false [etc.] matter, following," etc. It not being alleged that the words were spoken of and concerning the plaintiff's business, no innuendo can supply the defect. *Clement* v. *Fisher*, 7 Barn. & Cress. 459. 14 E. C. L. 209. *Barnes* v. *Trundy*, 31 Maine, 321, 323, 324. *Bloss* v. *Tobey*, 2 Pick. 320, 321.

If words are actionable by reason of special damage, such damage must be averred and proved as laid. *Barnes* v. *Trundy*, 31 Maine, 321, 324.

II. The words are not in themselves actionable. Those in the first count imply that the plaintiff was not guilty of corruption, intimidation and fraud, but that somebody else was, and that the plaintiff might have prevented it.

*D. N. Mortland & O. P. Hicks*, for the plaintiff.

BARROWS, J.　The defendant's criticisms upon the writ to which he has demurred would be pertinent if the case were one

of mere verbal slander. But, in respect to the supposed require-
ment that, in order to maintain an action for damages where
no crime is imputed, special damage must be alleged and
proved, a distinction has been long and uniformly maintained
between mere words and written or printed slander. Holt's Law
of Libel, First Am. Ed. 218–223. Much, which if only spoken
might be passed by as idle blackguardism doing no discredit save
to him who utters it, when invested with the dignity and malig-
nity of print, is capable by reason of its permanent character and
wide dissemination of inflicting serious injury.

The cases, ancient and modern, where this distinction has been
regarded are numerous. A reference to a few of them will serve
all the purposes of a more elaborate discussion.

Lord Holt says "scandalous matter is not necessary to make a
libel. It is enough if the defendant induce an ill opinion
to be had of the plaintiff, or to make him contemptible and ridic-
ulous." *Cropp* v. *Tilney*, 3 Salk. 226.

To say of a man "he is a dishonest man," is not actionable
without special damage alleged and proved; but to publish so, or
to put it upon posts, is actionable. *Austin* v. *Culpepper*, Skin.
124.

In *Villars* v. *Monsley*, 2 Wils. 403, the court say : "There is
a distinction between libels and words ; a libel is punishable both
criminally and by action, when speaking the words would not be
punishable either way. For speaking the words rogue and rascal
of any one an action will not lie ; but if those words were written
and published of any one an action will lie. If one man should
say of another that he has the itch, without more, an action
would not lie ; but if he should write those words of another and
publish them maliciously, as in the present case, no doubt but the
action well lies."

In another case, where the defendant had applied the epithet
"villain" to the plaintiff, in a letter to a third person, and the
plaintiff, though alleging, failed to prove any special damage, the
court ordered judgment for the plaintiff, expressing the opinion
that "any words written and published, throwing contumely on
the party, are actionable." *Bell* v. *Stone*, 1 Bos. & Pul. 331.

In one of Christian's notes to Blackstone mention is made of a case where a young lady recovered £4000 damages for reflections upon her chastity published in a newspaper, though she could not under English laws, without alleging special damage, such as loss of marriage or the like, have maintained an action for verbal slander containing the grossest aspersions upon her honor.

In *Janson* v. *Stewart*, it was held that to print of any person that he is a swindler is a libel and actionable; for it is not necessary, in order to maintain an action for libel, that the imputation should be one which, if spoken, would be actionable as a slander.

In *Thornley* v. *Lord Kerry*, 4 Taun. 355, the words of the alleged libel as declared on were, " I pity the man (meaning the plaintiff) who can so far forget what is due to himself and others as, under the cloak of religion, to deal out envy, hatred, malice, uncharitableness and falsehood." Mansfield, chief justice of the common pleas, pronouncing judgment for the plaintiff in the exchequer chamber at Easter term, 1812, while he declared himself personally disposed to repudiate the distinction between written and unwritten scandal, says : " I do not now recapitulate the cases, but we cannot, in opposition to them, venture to lay down at this day that no action can be maintained for any words written, for which an action could not be maintained if spoken."

For later English cases maintaining the same doctrine see *McGregor* v. *Thwaites*, 3 Barn & Cress. 24, E. C. L. R. vol. 10. *Clement* v. *Chivis*, 9 Barn. & Cress. 172, E. C. L. R. vol. 17. *Woodard* v. *Dowsing*, 2 Man. & R. 74, E. C. L. R. vol. 17. *Shipley* v. *Todhunter*, 7 Car. & P. 680, E. C. L. R. vol. 32, p. 690. *Parmiter* v. *Coupland*, 6 Mee. & W. 105.

The American cases on this point follow in the same line with the English. *Runkle* v. *Meyer*, 3 Yeates, 518. *McCorkle* v. *Binns*, 5 Binn. 354. *McClurg* v. *Ross id.* 218. *Dexter et ux.* v. *Spear*, 4 Mas. 115. *Dunn* v. *Winters*, 2 Humph. 512. *Clark* v. *Binney*, 2 Pick. 113, 116. *Stow* v. *Converse*, 3 Conn. 325. *Hillhouse* v. *Dunning*, 6 Conn. 391. *Shelton* v. *Nance*, 7 B. Mon. 128. *Mayrant* v. *Richardson*, 1 Nott & M. (S. C.) 210. *Colby* v. *Reynolds*, 6 Vt. 489.

It is true that some able jurists agree with Mansfield, C. J., in

doubting whether this distinction between verbal and written or printed slander is well founded in principle, while they recognize the force of the authorities which sustain it. Others maintain it upon reason as well as authority. The subject is discussed with numerous references to cases, old and new, English and American, in a note to *Steele* v. *Southwick*, in 1 Hare & Wallace's American Leading Cases, 5th Ed. 123.

*Steele* v. *Southwick*, was an early case in New York, decided in 1812 and reported, 9 Johns. 214. It was there held that the published words complained of, if they did not import a charge of perjury in the legal sense, were nevertheless libelous as holding the plaintiff up to contempt and ridicule, as regardless of his obligations as a witness and unworthy of credit, and that they were consequently actionable. We concur entirely in the remarks of the court that, "to allow the press to be the vehicle of malicious ridicule of private character would soon deprave the moral taste of the community and render the state of society miserable and barbarous. It is true that such publications are also indictable as leading to a breach of the peace; but the civil remedy is equally fit and appropriate." We do not mean to say that every indictable libel would be a good foundation for a civil action.

Attention is called in *Stone* v. *Cooper*, 2 Denio, 293, 294, to one class, libels upon the dead, as being one where no private injury would probably result from the publication.

It may perhaps be fairly held, as in that case, that where no special damage is averred or proved, "the nature of the charge itself must be such that the court can legally presume he has been degraded in the estimation of his acquaintance or of the public, or has suffered some loss either in his property, character or business, or in his domestic or social relations, in consequence of the publication."

Whether a mere injury to the feelings resulting from the publication of an indictable libel would of itself furnish ground for the maintenance of a civil action we need not now inquire.

It is sufficient to dispose of this demurrer to hold that in an action for written or printed slander, though no special damage is alleged, and no averments of such extrinsic facts as might be

requisite to make the publication in question import a charge of crime are made, the action is nevertheless maintainable if the published charge is such as, if believed, would naturally tend to expose the plaintiff to public hatred, contempt or ridicule, or deprive him of the benefits of public confidence and social intercourse.

It cannot be successfully contended that the statements alleged in this writ to have been published by the defendant in his newspaper of and concerning the plaintiff would not, if believed, tend strongly to deprive him of public confidence and expose him to public hatred and contempt. It is not necessary to inquire whether the pleader has not carelessly undertaken to convey by innuendo what should have been made the subject of distinct averments if the publication was to be regarded as importing a charge of a criminal offense against the plaintiff.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and PETERS, JJ., concurred.