Boynton, O. J.
The defendant was indicted for publishing a false and malicious libel concerning Tandy S. Collins. The indictment was founded on section 21, chapter 3, of the crimes act of 1877 (74 O. L. 246 ; Rev. Stat. § 6828). On motion of the defendant, the court quashed the indictment on the ground that it charged no offense. The correctness of this ruling is the only question arising in the case. It is claimed in argument, in support of the order quashing the indictment, that the matter charged as libelous is not actionable except upon averment and proof of special damage, and consequently that the publication cannot be made the subject of an indictment.
This result, undoubtedly, would follow if counsel are right in the position that proof of special damage is essential to recovery, in a civil action by the party concerning whom the publication is made. Such proof, however, is not essential to recovering, as will be presently shown. Counsel have fallen into an error in assuming that the rule applicable to words spoken, applies with all its limitations to matter that is written and published.
In Watson v. Trask, 6 Ohio, 531, it was said that “ a libel in reference to individual injury may be defined to be a false and malicious publication against an individual, either in print, or writing, or by pictures, with intent to injure his reputation, and expose him to public hatred, contempt, or ridicule.” “Words of ridicule only, or of contempt, which merely tend to lessen a man in public esteem, or to wound his feelings, will support a suit for libel, because of their being embodied in a more permanent and enduring form ; of the increased deliberation and malignity of their publication, and of their tendency to provoke breaches of the public peace.”
In Tappan v. Wilson, 7 Ohio, 190, it was further said that if the “ tendency of the publication,” being malicious, “ is to *33 degrade and lessen the standing ” of the person concerning whom the publication is made, it is a libel. The general current of authority is to the same effect, holding that although the matter published might not, without averment and proof of special damage, be actionable, if only spoken, yet if published, and it be of a character, which, if believed, would naturally tend to expose the person concerning whom the same was published, to public hatred, contempt, or ridicule, or deprive him of the benefits of public confidence or social intercourse, such publication is a libel, and an action will lie therefor although no special damage is alleged. Tillson v. Robbins, 68 Me. 295 ; Dexter v. Spear, 4 Mas. 115; Smart v. Blanchard, 42 N. H. 151; Adams v. Lawson, 17 Gratt. 250; M'Gregor v. Thwaites, 4 D. & R. 695 ; Thorley v. Kerry, 4 Taunt. 354; Villers v. Mousley, 2 Wils. 403; Starkie on Slander and Libel, § 153; see note to Steele v. Southwick, 1 Hare & Wallack, Am. L. C. 123; Roscoe’s Nisi Prius Evidence, 791; 2 Wharf. Cr. Law, § 1598.
In Cropp v. Tilney, 3 Salk. 226, Lord Holt said:—“ Scandalous matter is not necessary to make a libel. It is enough if the defendant induces an ill opinion to be had of the' plaintiff, or to make him contemptible or ridiculous.”
In Shipley v. Todhunter, 7 C. & P. 680, Tindal, O. J., said that “ any written communication which bears on the face of it any charge, or which tends to vilify another, is a libel.”
In Woodard v. Dowsing, 2 M. & R. 74, it was said, that “ any written publication which tends to disgrace, is actionable.” And in Sexton v. Spear, supra, it was said by Judge Story, that “ any publication, the tendency of which is to degrade or injure another person, or bring him into hatred, ridicule, or contempt, or which accuses him of a crime punishable by law, or of an act odious and disgraceful in society, is a libel.”
In Bell v. Stone, 1 Bos. & Pul. 331, the action was for publishing of the plaintiff that he was a “ villain.” The plaintiff failing to prove special damage, the court directed a verdict for the defendant; counsel, however, contending that inasmuch as the charge was in writing, it was actionable without proof of special damage, the court asked the jury what damages they *34 would give supposing the plaintiff entitled to recover in point of law. They answered, one shilling.
Subsequently a rule was granted on the defendant to show cause why the verdict in his favor should not be set aside, and a verdict entered for the plaintiff; and, upon the hearing, the court expressed themselves “ clearly of the opinion that any words, written and published, throwing contumely on the party, were actionable,” and ordered the rule to be made absolute. These authorities abundantly show that in many instances a marked distinction exists between words spoken, and 1 lie same words written and published ; and that words written or printed and published, imputing to another any act, the tendency of which is to disgrace him, or to deprive him of the confidence and good will of society, or lessen its esteem for him, are actionable per se. and consequently lay the foundation for an indictment under the statute.
There can -be no doubt, within the principle of these cases, that the indictment in the present case charged the offense of libel. No one could read the article set out, assuming its statements to be true, without regarding it as seriously reflecting on the character of Collins. It directed public attention to the fact, that the circumstances implicating him in the larceny, or in receiving and secreting the goods stolen, were sufficiently suspicious to justify a search of his house for their recovery. Such being the tendency of the publication its libelous character is clearly established; and especially is this so, when the fact is considered, that in case' the goods or any part thereof were found, upon such search, the statute expressly required the owner to be arrested and taken before the justice. 1 S. & C. 816.
The objection that the innuendo averring the meaning of the language relating to the search was not justified by the lan-' guage used, is not well founded. Where the meaning of the defendant by the language employed is equivocal or doubtful, the question whether the publication is libelous or not is one for the jury. So, too, whether the meaning of the defendant by the language used was what the innuendo avers it to be, if fairly susceptible of that meaning, is a question of fact, and not *35 of law. Mr. Starlde states it to be the duty of tbe court to determine whether the language will bear the meaning ascribed to it by the innuendo, and if it will, that the question whether such meaning was intended, must be submitted to the jury. Starkie on Slander, § 561. This we believe to be the true rule, and applying it to the present case, we think the point admits of little doubt, that the language employed by the defendant will bear the meaning which the innuendo ascribed to it, and that in holding otherwise the court erred.

Exceptions sustained.