# PROVIDENCE COUNTY.

STATE *vs.* ALONZO SPEAR and FRANK E. CORBETT.

A publication is libellous if without charging an indictable offence it falsely and maliciously imputes conduct tending to injure reputation, to cause social degradation, or to excite public distrust, contempt, or hatred.

An indictment for libel it good if it charges the publication of matter not libellous *per se,* but charges such publication with proper inducement and innuendoes to set forth and explain the defamatory statements of the publication.

EXCEPTIONS to the Court of Common Pleas.

An indictment was found against the defendants as follows :

" Providence, sc.: At the Court of Common Pleas of the State of Rhode Island and Providence Plantations, holden at Providence, within and for the county of Providence, on the first Monday of March, in the year of our Lord one thousand eight hundred and eighty-one.

" The grand jurors of the State of Rhode Island and Providence Plantations, in and for the county of Providence, upon their oaths present: That Alonzo Spear, yeoman, and Frank E. Corbett, yeoman, both of or commorant of Providence, in said county, on the twenty-sixth day of December, in the year of our Lord. one thousand eight hundred and eighty, with force and arms, at Providence aforesaid, in the aforesaid county of Providence, unlawfully and maliciously contriving and intending to vilify and defame one James O. Swan, who, on the day aforesaid, and long prior thereto, was and had been a police constable in said Providence, in said county and State, and employed as a detective in said Providence, in said county and State, and who, before said date last mentioned, went to South Kingstown, in the county of Washington, in said State, for the purpose of ascertaining who had possession of the freight, cargo, and property which had come on shore from the steamer Rhode Island, which said steamer had been wrecked off the coast of said South Kingstown, on the to wit     day of in the year of our Lord one thousand eight hundred and eighty,

before said first mentioned date, and to injure him, the said James O. Swan, both as an individual and as police constable and detective, with force and arms, at said city of Providence, in said county of Providence, in said State of Rhode Island, on the said twenty-sixth day of December, in the year of our Lord one thousand eight hundred and eighty, did unlawfully, wickedly, and maliciously compose and publish and cause and procure to be composed and published in a certain newspaper called the " Sunday Morning Transcript," published and circulated in said Providence, in said county and State, by said Alonzo Spear and said Frank E. Corbett, said Alonzo Spear being the proprietor, and Frank E. Corbett the editor thereof, said newspaper on the day, month, and year first aforesaid, having been published and circulated as aforesaid, by said Alonzo Spear and said Frank E. Corbett, at said Providence, in said county and State, on said twenty-sixth day of December, in the year of our Lord one thousand eight hundred and eighty, a certain false, scandalous, wicked, malicious, mischievous and defamatory libel of, and concerning him, the said James O. Swan, containing the false, scandalous, wicked, malicious, mischievous, and defamatory and libellous words and matters according to the tenor following, that is to say :

" Detective Swan (meaning the said James O. Swan) holds, at present, some one and a half tons of rubber picked up at the wreck of the steamer Rhode Island (meaning the wreck of the steamer Rhode Island, wrecked as aforesaid, on the coast of said South Kingstown). Boston parties shipped quantities of rubber on that steamer, and of the same kind that Swan (meaning the said James O. Swan) now holds, but, of course, the marks of identification have been effaced, and they cannot prove their property, and so Swan (meaning the said James O. Swan) holds it, and will undoubtedly eventually sell it. (Meaning that said James O. Swan has taken possession of, and holds, rubber from those lawfully entitled to the possession thereof, with the intention of selling the same, instead of delivering the same into the possession of those lawfully entitled thereto.) The question is, what did Detective Swan (meaning said James O. Swan) leave this city for (meaning said city of Providence) and go to the scene of the wreck ? (Meaning the place where said steamer Rhode Island was

wrecked.) Did he (meaning said James O. Swan) go to protect the property from thieves, and assist in its saving, or did he (meaning said James O. Swan) go for the purpose of scooping in what he (meaning said James O. Swan) could lay his (meaning said James O. Swan's) hands upon ? (Meaning, in connection with the aforegoing, to charge by interrogation and insinuation that said James O. Swan, instead of going to said place for a proper purpose, went there for the purpose of unlawfully and improperly taking possession of, and appropriating to his own use and benefit, property from said wreck.) It don't seem probable that citizen taxpayers would sanction the idea of paying a man $3.50 per day to go on a wrecking cruise and keep all the spoils he could get. (Meaning that said James O. Swan, being employed by the city of Providence, and going to the place of said wreck, abused the purpose for which he went, by unlawfully and improperly keeping and appropriating to himself, for his own use and benefit and profit, property which might come into his possession from said wreck.) If all the policemen who were sent to the wreck of the Rhode Island (meaning said steamer Rhode Island) acted in the same way (meaning in the way charged as aforesaid in said publication as by the innuendoes aforesaid), a disgrace of greater magnitude would rest upon the force (meaning the police force of said city of Providence) than there is at present upon it. (Meaning said force) (meaning that the conduct of said James O. Swan, in connection with the wreck and with property therefrom, has brought disgrace upon the police force of said city of Providence.) To the great injury, scandal, and disgrace of the said James O. Swan, and against the form of the statute in such case made and provided, and against the peace and dignity of the State."

" Preferred by

" SAMUEL P. COLT, *Assistant Attorney General.*"

After verdict for the State the defendants moved in arrest of judgment in the Court of Common Pleas, because:

*First.* No indictable offence was set out in the indictment.

*Second.* Proper averments and inducements are wanting in said indictment to render certain precisely what the libel is of which the defendants are accused.

This motion was overruled by the presiding justice, and the defendants excepted.

*June* 14, 1881. DURFEE, C. J. The motion in arrest raises the question whether the defendants are duly accused of a criminal libel on James O. Swan. We think the question must be answered affirmatively. The publication complained of as libellous is recited verbatim in the indictment, being prefaced by an inducement setting forth extrinsic facts and circumstances and accompanied by innuendoes which explain its meaning and application. It is true it imputes no indictable offence, but it is not necessary that it should to make it libellous. It is enough, if false and malicious, that it imputes conduct which, if said Swan were guilty of it, would injure his reputation, or degrade him in society, or lower him in the confidence of the community, or bring him into public hatred and contempt. 2 Wharton Criminal Law, § 2535; *State* v. *Jeandell & Vincent*, 5 Harring. Del. 475, 480, 481; *Tillson* v. *Robbins*, 68 Me. 295; *Cooper* v. *Greeley & McElrath*, 1 Denio, 347; *Miller* v. *Butler*, 6 Cush. 71; *Commonwealth* v. *Wright*, 1 Cush. 46; *Villers* v. *Monstey*, 2 Wils. 403. The publication complained of was, in our opinion, well calculated to produce precisely these effects, and all the more calculated to produce them because of the official character of James O. Swan and of the avidity of the public for scandalous stories against men in office.

The specific objections to the indictment are two. The first is that the publication is not susceptible of so defamatory a meaning as is attributed to it by the innuendoes. We think, on the contrary, that the innuendoes err rather by defect than excess of imputation. And the verdict of course shows that the jury were of the opinion that the publication was in fact intended to convey the meanings attributed to it. *Commonwealth* v. *Keenan & Clark*, 67 Pa. St. 203; *Sanderson* v. *Caldwell*, 45 N. Y. 398.

The second objection is that the publication is not libellous *per se*, and that, for that reason, the indictment is fatally defective in not alleging with certainty and particularity what the libel or defamation is which is contained in it and against the charge of which the defendants had to defend themselves. It is not by any means clear to our minds that the publication is not libellous *per se;* but, granting that it is not, we nevertheless consider the indictment sufficient. We think it not improbable that it would have been

more perfect *in point of form* if the colloquium or prefatory aver-
ments had set forth with more precision the defamatory imputa-
tions which the defendants are accused of making in the publica-
tion, but under our statute, Gen. Stat. R. I. cap. 236, § 4, no
indictment "shall be abated or quashed for any *want of form*,
provided it contain such allegations of the offence that the accused
shall be able to plead and make defence thereto, without prejudice
to his rights, and to avail himself of any judgment thereon in case
of a second complaint against him for the same offence," and in
our opinion the indictment here comes fully up to these require-
ments.

The indictment shows that previous to the publication com-
plained of, James O. Swan was a police constable and detective
in Providence, and that the steamer Rhode Island having been
wrecked off the coast at South Kingstown, he went there to ascer-
tain who had possession of the freight, cargo, and property which
had been washed ashore, though it does not state whether he went
in his individual or official capacity. The indictment, having so
averred, goes on to allege that the defendants, maliciously con-
triving and intending to vilify and defame said Swan, both as an
individual and as a police constable and detective, published of
and concerning him, &c., setting forth the alleged libel with in-
nuendoes.

The alleged libel contains several distinct statements, the first
of which is the following : " Detective Swan holds at present some
one and a half tons of rubber picked up at the wreck of the
steamer Rhode Island. Boston parties shipped quantities of rub-
ber on that steamer, and of the same kind that Swan now holds,
but of course the marks of identification have been effaced, and
they cannot prove their property, and so Swan holds it, and will
undoubtedly eventually sell it." It is very plain here that the
imputation is that Swan having got possession of rubber from
the wreck, belonging to some person or persons other than him-
self, and probably to said Boston shippers, nevertheless, taking
advantage of the effacement of the identifying marks, and with-
out seeking for the owners, was holding it with the intention of
eventually selling it and appropriating the proceeds of the sale
to himself. The innuendoes actually inserted, however, fail to

bring out the imputation so explicitly as we have stated it. The main innuendo is this : " Meaning that said James O. Swan has taken possession of and holds rubber from those lawfully entitled to the possession thereof, with the intention of selling the same instead of delivering the same into the possession of those entitled thereto." If the indictment rested solely on the first statement, as thus explained, the objection to it would have some plausibility, for the reason that the innuendo does not bring clearly out what we think was obviously meant to be understood, namely : that Swan, taking advantage of the effacement of the marks and not seeking for the owners, whom he could readily have found, intended to sell the. rubber and appropriate the proceeds ; but whether even then the objection would be tenable we need not decide, for other statements follow, of which the libellous meanings are brought out with unexceptionable precision.

The second statement is as follows : " The question is, what did Detective Swan leave this city for and go to the scene of the wreck ? Did he go to protect the property from thieves and assist in its saving ? or did he go for the purpose of scooping in what he could lay his hands upon ? " The principal innuendo is : " Meaning, in connection with the aforegoing, to charge by interrogation and insinuation, that said James O. Swan, instead of going to said place for a proper purpose, went there for the purpose of *unlawfully* and *improperly* taking possession of, and appropriating to his own use and benefit, property from said wreck," or, to use other language, that he went there for the purpose of committing, if not absolute larceny, something which in morality is not easily distinguishable from it. Here certainly it cannot be doubted what the imputation is which the defendants are accused of making, nor that it is libellous.

The third statement and innuendo are these : " It don't seem probable that citizen taxpayers would sanction the idea of paying a man $3.50 per day to go on a wrecking cruise and keep all the spoils he could get ; meaning that said James O. Swan, being employed by the city of Providence, and going to the place of said wreck, abused the purpose for which he went, by unlawfully and improperly keeping and appropriating to himself, for his own use and benefit and profit, property which might come into his posses-

sion from said wreck." Here, likewise, it seems to us, the meaning is so pointedly brought out as to leave no doubt either of what the precise imputation is or that it is libellous.

The last statement is, as explained by the innuendo, to the effect that Swan's conduct, in respect of the wreck and the property therefrom, was such that it has brought disgrace upon the police of the city of Providence. The statement is, in our opinion, so damaging to the reputation of Swan, as one of the Providence police, that it is libellous. And in this connection, so far as we can discover, the libel is sufficiently charged.

The defendants refer to *State* v. *Corbett*, 12 R. I. 288, as a precedent in their favor. In that case there was neither inducement nor innuendoes; and without them the publication complained of, though it might have been understood in a sense which would be defamatory of the person alleged to be libelled, might likewise have been understood in a sense which would be entirely innocuous in respect of him. The publication here, as elucidated, explained, and charged in the indictment, is not open to any such objection.

The exception is overruled and the cause remanded for sentence.

*Exceptions overruled.*

*Samuel P. Colt*, Assistant Attorney General, for plaintiff.
*Charles A. Wilson & George J. West*, for defendants.