CHARLES L. MACURDA *vs.* LEWISTON JOURNAL COMPANY.

Lincoln. Opinion March 14, 1912.

*Libel and Slander. Newspaper Articles. Construction. Innuendo. Malice.*
*Evidence.*

Whether a newspaper article is libelous is to be determined from an examination, not of a clipping, but of the entire article.

A newspaper item stating that there was a deadlock over the extradition of the plaintiff, who was indicted for larceny from an estate, was not libelous as imputing larceny, where a subsequent paragraph of the same item stated that the specific charge on which the plaintiff was indicted was for procuring a genuine signature to an instrument, the false making of which would be forgery.

In determining the effect of a newspaper item charging the plaintiff's indictment, it is unnecessary that the reader should be able to make a legal distinction between the offense charged in the alleged libelous words and the offense described in the entire article.

Where a newspaper article is claimed to be libelous as charging the commission of a public offense, the charge cannot be enlarged by innuendo.

An editorial, stating that it was hoped that it was not true that extradition of the plaintiff, under an indictment for larceny from an estate, was denied because of political pressure, was not libelous as imputing larceny to the plaintiff, where the item further stated that the specific charge against the plaintiff was for procuring an order, through false pretenses, to deposit money.

Newspaper articles concerning the plaintiff, and relied on by him as being libelous, cannot be deemed to be malicious, where the evidence showed that the plaintiff was unknown to the writer.

On report. Judgment for defendant.

Action of libel against the Lewiston Journal Company, the owner and publisher of a public newspaper called the Lewiston Evening Journal, charging that the defendant company published in its said newspaper "a certain scandalous and malicious libel of and concerning the plaintiff, and of and concerning him in his profession as an attorney at law, and of and concerning his conduct" in a certain matter called the "Barris matter." Writ dated September 22,

1908. The declaration in the writ fills 18 printed pages of the record. Plea, the general issue, with a brief statement which also fills 18 printed pages of the record. The action was tried at the April term, 1909, of the Supreme Judicial Court in Lincoln County and resulted in a disagreement of the jury. The action was then continued until the October term, 1910, of said court, when the case was reported to the Law Court under the following agreement: "By agreement of counsel this case is reported to the Law Court upon so much of the evidence taken at the trial at the April Term, 1909, as is legally admissible, the Law Court to determine all questions of law and fact involved and to render such judgment therein as the law and the admissible evidence require, including the assessment of damages if the plaintiff is legally entitled to damages."

The case is stated in the opinion.

*Arthur S. Littlefield, and George C. Wing,* for plaintiff.

*Symonds, Snow, Cook & Hutchinson, and McGillicuddy & Morey,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

SPEAR, J. This is an action of libel against the Lewiston Evening Journal charging that paper with publishing a certain scandalous and malicious libel concerning the plaintiff and of and concerning him in his profession as an attorney at law, and of and concerning his conduct in the Barris matter. The Barris matter briefly stated was this: Wm. J. Barris and Irving H. Barris, the former the husband, the latter the son, of Alice G. Barris, were instantly killed, and Alice G. was seriously injured, in the Bakers Bridge accident, so called, on the Boston & Maine Railroad, which occurred on the 4th day of December, 1905. Robert F. Barris was appointed administrator of the estate of Wm. J. and Irving H. The plaintiff, being a friend of the family, was employed by the administrator to adjust the claims against the railroad. This he was able to do without suit, receiving the sum of ten thousand dollars for the death of the husband and son, for the benefit of Alice G. Barris. The plaintiff then obtained a written instrument signed by Alice

G. Barris, purporting to be a discharge or release of any obligation to her, her heirs, executors or administrators, upon any bond of the United States Fidelity and Guaranty Company filed in any Probate Court by Robert F. Barris or others as administrator of the estate of Irving H. Barris or of Wm. J. Barris. The plaintiff received, of the ten thousand dollars, $3333.33 from the administrator for his services, as shown by the following receipt: "Boston, January 4, 1906. Received from Robert F. Barris, administrator of the estate of William J. Barris and Irving H. Barris, three thousand three hundred and thirty-three ($3333.33) dollars and thirty-three cents in full for legal services rendered said administrator in procuring a settlement and adjustment with the Boston and Maine Railroad, of the claims which the said administrator had arising out of the deaths of William J. Barris and Irving H. Barris. (Signed) C. L. M." The account of the administrator presented to the Probate Court upon the estate of William J. Barris contained the following item for counsel fees: "Paid Chas. L. Macurda, Atty., of Wiscasset, Maine, for services in the matter of injuries to deceased—$1666.66," upon which but $150 was allowed by the court. Precisely the same item appeared in the administrator's account upon the estate of Irving H. Barris, and the same amount was allowed. That is, upon both accounts, for which the plaintiff had received $3333.33 as counsel fees, the court allowed $300, thus leaving the sum of over $3000 to be accounted for by the administrator to the estate. On the 4th day of June, 1906, the United States Fidelity and Guaranty Co., surety upon the bond of Robert F. Barris, paid to Alice G. Barris, as administratrix d. b. n., Robert F. having resigned, the sum of $3283.34 by reason of its acting as surety on the bonds given by Robert F. Barris as administrator of the estate of Wm. J. and Irving H. Barris. This was to supply the amount which the plaintiff had received as counsel fees in excess of that allowed by the court. Having paid the above sum of money the surety company claimed that the written instrument above alluded to, and of the following tenor, to wit: "I, Alice G. Barris of Maynard, Mass., in consideration of one ($1.00) dollar and other good and valuable considerations paid to me by the United State Fidelity & Guaranty Company, hereby release and discharge said Guaranty Company from all liability to me or my heirs, executors or administrators under any bond or bonds filed in

any Probate Court by Robert F. Barris or others as Administator of the estate of Irving H. Barris and of the estate of William J. Barris, both deceased, late of Maynard. Witness my hand and seal this 16th day of December, 1905. Alice G. Barris (seal) Witness, Charles L. Macurda," was procured by the fraud of the plaintiff, and that, relying upon this fraudulent instrument, it was induced to become surety upon the administrator's bonds of Robert F. Barris, upon which it was obliged to pay the above sum of $3283.34.

When the alleged libel complained of was published, the plaintiff upon the above state of facts had been indicted in Massachusetts, the Commonwealth in its indictment alleging that this release, purporting to be executed by Alice G. Barris, although signed by her, was obtained by the plaintiff through misrepresentation and fraud, upon the false pretense that the instrument was to be used for the purpose of authorizing the plaintiff to deposit the money collected of the railroad in savings banks; that Falvey and Berry, authorized attorneys to execute the bond of the Fidelity & Guaranty Co., were induced to place their signatures upon the bond, in execution thereof, in reliance upon the release thus procured and presented by the plaintiff; and that "the said Macurda then and there did obtain the signature of said Falvey and said Berry, such attorneys as aforesaid, to a written instrument, the false making of which would be punishable as forgery, to wit, a certain bond."    .    .    .
The specific offense then for which the plaintiff was indicted was for procuring genuine signatures to be affixed to an instrument, the false making of which would be equivalent to forgery.

The alleged libelous articles complained of in the plaintiff's writ were published in the Lewiston Evening Journal of October 21, 1907, one appearing as a news item, the other as an editorial. The news item was copied verbatim from the Boston Sunday Globe of October 20, 1907, but, as the question of liability only will be involved in the decision of this case, the defendant will be required to assume full responsibility for both the news and the editorial items. The plaintiff's declaration contains four counts, but only those charging that the defendant was indicted for larceny will be considered, as all other general satements contained in either the news items or the editorial are capable of defense under the plea of truth. Nor need we consider but one count, as the libelous

matter set out in the first count is of precisely the same nature as that set out in the other counts, and as broadly stated, and the same defense which can be set up in answer to the charge in the first count can be pleaded with equal force to the charges in the other counts.

The first count alleges that the defendant on the 21st day of October, 1907, published "a certain scandalous and malicious libel of and concerning the plaintiff, and of and concerning him in his profession as an attorney at law, and of and concerning his conduct in said Barris matter, containing therein among other things the false, scandalous, malicious, libelous and defamatory matter following, viz: "There is a deadlock over the extradition of Charles L. Macurda (meaning the plaintiff) a lawyer of Wiscasset, Maine, who (meaning the plaintiff) is indicted here (meaning the Commonwealth of Massachusetts) for larceny in three counts from the estate of Arthur L. Barris of Watertown." If the above item as quoted had comprised all that was said concerning the indictment of the plaintiff, it would undoubtedly be libelous, even though the plaintiff had been indicted for another offense; but this item is merely an extract, severed from its connection with the rest of the article which gives an explanation of the transaction leading up to the indictment in the State of Massachusetts. The defendant in its plea sets forth in full the articles published, from which the plaintiff has selected the quotations of which he complains, and avers that the effect of the articles as a whole are calculated to convey to the mind of the reader of reasonable understanding, candor and discretion, the precise offense for which the plaintiff was actually indicted.

It is familiar law in this state that whether a written statement is libelous or not is to be determined from an examination, not of a clipping, but of the entire article in which the alleged libelous language appears, and upon the impression produced by the article as a whole. In *Wing* v. *Wing,* 66 Maine, 62, the court say with reference to the interpretation to be placed upon libelous matter alleged to have been contained in a communication: "Another rule is, that all the words spoken, so far as necessary to ascertain the meaning of the person who utters them, must be considered together. The sense of actionable words may be so far qualified by subsequent words spoken in the same connection, that the words

taken together are not actionable. Therefore, if a person is charged with stealing, under such circumstances as show that a felony was not capable of being committed, the words are not to be regarded as actionable. Among the illustrations of this rule, is the familiar one found in the books and stated in Bac. Abr. in this way: 'If J. S. say to J. N., thou art a thief, and hast stolen my trees,' no action lies; it appearing from the latter words, that the whole words only import a charge of a trespass.' " In *Bearce* v. *Bass,* 88 Maine, 521, the same rule is approved by the court in the following language: "The construction to be put upon this particular part of the alleged libelous publication must be that which is consistent with the whole article, that which follows as well as that which precedes." In *Thompson* v. *Sun Co.,* 91 Maine, 207, the rule is reaffirmed in this language: "It is not the intention of the writer, or the understanding of any particular reader that is to determine the question. It is rather the effect which the language complained of was fairly calculated to produce and would naturally produce upon the minds of readers of reasonable understanding, discretion and candor, after it has been examined and considered in connection with all other parts of the writing, and in the light of all the facts and circumstances known to them." The same rule was established in Massachusetts in *Allen* v. *Hillman,* 12 Pick. 103, in an opinion by Chief Justice Shaw in which he says: "The use of the word 'robbed' which the evidence leaves a little doubtful, would make no difference, if as we think the conversation taken together proves the term was applied to the plaintiff, as having appropriated and converted the money intrusted to him as treasurer, to his own use. It would be like the common case put to illustrate the rule, that the words must, all taken together, charge an indictable offense, 'he is a thief, he has stolen apples from my trees.' The first clause in the sentence charges a felony; but taken in connection with what immediately follows, it shows that the defendant imputed only a trespass." The same doctrine is laid down in *Edgeley* v. *Swain,* 32 N. H., 482.

Upon these decisions the plaintiff's case must be determined. Whether or not the language used will bear the interpretation given to it by the plaintiff, whether or not it is capable of conveying the meaning which he ascribes to it, is in such a case a question of law for the court." *Thompson* v. *Sun Pub. Co.,* 91 Maine, 207. As a

matter of law, therefore, it is the opinion of the court that neither
the news article, nor the editorial, when read with reference to
their effect as a whole can be regarded as libelous.   The word
"larceny" read in connection with the rest of the article, shows that
the defendant imputed only the offense for which the plaintiff was
actually indicted.   The news article, after referring to the deadlock
over the extradition of the plaintiff, then contains two short para-
graphs relating to the controversy between the Governor of Maine
and the Governor of Massachusetts, and in the third paragraph
fully explains the meaning of the words "indicted here for larceny"
by use of the following language: "Specifically Macurda is indicted
for procuring a genuine signature to be affixed  to an instrument,
the false making of which would be forgery."

It is the opinion of the court that the news article taken as a
whole would not, to a mind of reasonable intelligence and candor,
lead to the conclusion that the plaintiff was charged with having
been indicted for larceny, as the sentence just quoted, beginning
with the word "specifically," as clearly and succinctly states the
exact offense for which the plaintiff was indicted as the English
language can convey.   The effect of the article as a whole, we also
think, would impress the mind of the intelligent and candid reader,
with a full understanding of all the facts upon which the plaintiff
was indicted, and particuarly with the gravamen of the charge, as
found in the indictment, that he fraudulently obtained the release
alluded to; that upon the strength of this fraudulent paper he had
obtained the execution of the bonds in question; that he had
received $3333.33 for his services; that the bonding company had
been induced by the plaintiff's fraud to execute the bonds; and that
the defendant was indicted for fraudulently procuring their signa-
tures.   These general facts found in the news item ought to inform
the ordinarily intelligent and reasonable mind that, whatever the
offense was technically called, the plaintiff was actually indicted
for having done the things which were generally and truthfully
narrated as well as specifically defined.   The effect of reading the
news article as a whole, therefore, brings it within the decisions
above quoted, and especially within the language of the 91 Maine,
207, supra, "It is rather the effect which the language complained
of was fairly calculated to produce and would naturally produce
upon the minds of readers of reasonable intelligence, discretion and

candor, after it has been examined and considered in connection with all other parts of the writing, and in the light of all the facts and circumstances known to them."

Nor is it necessary, in determining the effect of the entire article upon the specifically alleged libel, that the reader should be able to make the legal distinction, between the offense charged in the alleged libelous words, and the offense described in the entire article. This rule seems to follow from the decision already alluded to in *Wing* v. *Wing,* 66 Maine, supra, where the slanderous words were "Arnold Wing stole windows from Benjamin Jordan's house." The court holds that these words are not actionable since windows "are strictly a part of a house and ordinarily affixed permanently thereto. If the defendant had intended to charge the theft of windows which are not a part of the house, the former expression would more naturally have been that the plaintiff stole Benjamin Jordan's windows, or windows from Benjamin Jordan." The word "stole" implies a felony and is well understood and admitted, when unexplained, to be slanderous, but when applied to real estate, such as a window becomes, if attached to a house, it is held by the court not to impute theft, inasmuch as real estate is not a subject of larceny. The words "from Benjamin Jordan's house" are therefore held to so explain and modify the slanderous word "stole" as to negative the inference of theft. If this refined distinction in the interpretation of the word "stole" in the imputed slander was regarded as sufficient to negative, in the minds of reasonable, intelligent and candid men, the inference of theft, it would seem that the explicit definition of the offense for which the plaintiff was indicted, taken together with the general explanation, would obviously modify and limit the meaning of the word "larceny," as used in the alleged libel in the case at bar, to the actual charge upon which the plaintiff was indicted.

The illustration used by Chief Justice Shaw in *Allen* v. *Hillman,* supra, is also pertinent in corroboration of this rule. In analyzing the case he says "that the words must, all taken together charge an indictable offense, 'he is a thief, he has stolen apples from my trees.'" As said, the first clause charges a felony, but when explained by what follows, it becomes in law a trespass. But it could hardly be expected that even the intelligent and candid layman would be able to make this legal distinction. It is undoubtedly

generally understood that stealing apples from trees is larceny, yet, not being so legally understood, the charge is not regarded as libelous or slanderous. All of the other cases cited are to the same effect.

In the second count the matter alleged to be libelous is an excerpt from the news item; but, as innuendo can in no way enlarge the charge, we are unable to discover in this allegation anything libelous or far afield from a narrative of the admitted facts. The third count consists of a combination of the two excerpts from the news article, as found in the first and second counts, and need not be further considered. In the fourth count the matter alleged to be libelous is taken from the editorial article, the material part of which reads: "We trust that the charge is not true that Governor Guild's request that the extradition of Mr. Macurda, a lawyer of Wiscasset, indicted for larceny from the estate of the late A. L. Barris of Watertown, Mass., is denied because of political press-ure." The gravamen of this charge is the use of the word "larceny." In this editorial comment, there also appears an explanation and specification of what is meant by the imputed charge of larceny in which it is said: "The attorney got an order from the bond insur-ance company to deposit this ten thousand dollars in Maine. The charge is that this order was secured by false pretenses." The last sentence states precisely the offense with which the plaintiff was charged and shows that the offense, imputed in the plaintiff's declaration, was not the offense described in the editorial when read as a whole. This construction is in accord with the legal principles which have already been considered in connection with the first count and does not require further comment. It should here be observed that the newspaper articles under consideration in each instance refer only to an indictment against the plaintiff, and not to his guilt. The distinction here noted is pointed out in *Stacy* v. *Portland Publishing Co.,* 68 Maine, 286, in this language: "To say that a man was arrested for murder and indicted for murder and tried for murder would not be saying or equivalent to saying that he was guilty of such a charge. If it were so, the newspaper press, would be sorely perplexed for publishing the current news." In accordance with this distinction we here wish to note that it is not our purpose to express the remotest opinion upon the guilt or innocence of the plaintiff of the offence with which he is charged.

Our conclusion is that these articles are substantially true; that there is no evidence to the contrary sufficient to raise a question of fact in this respect; and that the description of the indictment in Massachusetts as an indictment for larceny, in both the news article and the editorial comments, was directly and specifically modified by the context, although in each instance such modification was omitted in the plaintiff's declaration, but, under the pleadings, has been read into it.

Upon the evidence no malice could be imputed to the defendant as the writer of the editorial declared upon the witness stand that when the article was written and the news item copied, he did not know who the plaintiff was. The articles, therefore, cannot be regarded as libelous upon the ground that they originated in corrupt and malicious motives.

As the case comes up on report, the entry must be,

*Judgment for the defendant.*