LEONE SINCLAIR
*vs.*
GUY P. GANNETT, PUBLISHER,
ALIAS ET AL.

York.    Opinion, October 18, 1952.

230

*Lausier & Donahue*, for plaintiff.

*Berman, Berman & Wernick*, for defendant.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. MURCHIE, C. J., did not sit.

WILLIAMSON, J. This is an action for libel against the Guy Gannett Publishing Company, publisher of the "Portland Press Herald," a daily newspaper, and two of its employees, Charles E. Dawson, a staff writer, and John C. Olson, a photographer. The defendants severally bring forward exceptions to the overruling of pleas in abatement and special demurrers.

In substance the charge is that the Imperial Cafe, owned and operated by the plaintiff, was identified as the Calumet

Club, described as a gambling place, in a photograph published in the newspaper in connection with an illustrated article about gambling in the City of Biddeford. The statement in the declaration reads:

> "and immediately beneath said pictures appeared the following: 'By Staff Photographer Olson (meaning the defendant Olson) GAMBLING SITES—Gambling places in Biddeford, which have brought the ire of a special state prosecutor (meaning William H. Niehoff of Waterville appointed by Governor Payne's Attorney General, who led the investigation) who described them as "Nauseating", are shown in the above photos, and also located on the specially-drawn map by Staff Artist Sid Maxell. In photo Number 4 (meaning the photo of the Imperial Cafe) is where the Calumet Club, largest gambling place in the mill city, was located at 17 Alfred Street, next door to the Salvation Army; Number 7, wooden stairs lead to the Coffee House over a fruit store at 35 Main Street, opened by the operator of the Calumet Club when business got too heavy in the Calumet; Number 1, poker games and blackjack were run in this pool parlor at 73 Elm Street, outside the Saco-Lowell Shops; Number 8, the shoe repair shop at 12 Water Street, where the owner ran a gambling spot; Number 2, picture of the padlocked door to the West End Club at 240 Main Street; Number 3, shoe shine parlor at 39½ Franklin Street, where gin rummy was a specialty of the house, and other card games flourished. Not shown in photos, but located by their numbers on the map are also the Greek Coffee House, (number 5) on the second floor at 87 Main Street; and the Billiard Parlor at 53 Main Street, (Number 6), where a Sanford man operated a gambling spot', said foregoing statements clearly differentiating those 'sites' located on the first floor and on the second floor of the building referred to, and associating the plaintiff with Lucien Therrien by said picture or photo of said Imperial Cafe and the aforesaid explanatory

statement that 'In photo number 4 (meaning the photo of the Imperial Cafe) is where the Calumet Club, largest gambling place in the mill city, was located at 17 Alfred Street, next door to the Salvation Army', thus stating the plaintiff's Imperial Cafe was the location of the Calumet Club operated by said Lucien Therrien as referred to in said articles, said picture being unauthorized and printed and published without the knowledge or consent of the said plaintiff, and said articles published and circulated as stated aforesaid, the essential parts being as follows:"

Exceptions to the overruling of a plea in abatement for misnomer were waived by the publisher and so are not before us. In a proper effort to narrow the issues the publisher conceded in argument that if the article as written could be applied to the plaintiff then it would be a defamation. The defamatory character of the published material is therefore not questioned for purpose of testing the demurrers.

The other pleas in abatement by the defendants are on the groud of misjoinder of defendants. The same point is made in the special demurrers. No useful purpose can be served by keeping alive a dilatory plea where the same question is presented and argued on demurrer. We do not consider precisely under what circumstances a plea in abatement is or is not waived by a subsequent plea. It is sufficient for present purposes to say that the plea of each defendant in abatement for misjoinder was waived upon filing of the demurrer. See 1 *C. J. S.* 271, Sec. 211; 1 *Am. Jur.* 65, Sec. 71. The exceptions in each instance are overruled.

The special demurrers now require attention. The first stated ground in each instance is misjoinder of defendants. The contention is that the plaintiff has improperly joined the employer, liable solely under the principle of *respondeat superior*, with its employees as joint tort-feasors.

In the case of the staff writer — and the case of the photographer is identical — a further objection is that he is not charged with publication of the libel. The plaintiff has alleged publication by the newspaper publisher "with the knowledge and consent of the other defendants," meaning the staff writer and the photographer. Such a statement is not an allegation that the staff writer or the photographer published the defamatory matter. The plaintiff failed to allege an essential element in the action of libel. No cause of action was stated against the staff writer or the photographer. For this reason alone, without consideration of the first ground, the exceptions by the staff writer and the photographer are sustained. Their demurrers should have been upheld. *Macurda* v. *Lewiston Journal Co.,* 104 Me. 554, 72 A. 490; *Milner* v. *Hare,* 126 Me. 14, 135 A. 522; *Reynolds* v. *W. H. Hinman Co.,* 145 Me. 343, 75 A. (2nd) 802; 53 *C. J. S.* 264 *et seq.,* Sec. 169.

The rulings in favor of the staff writer and the photographer although not in terms directed to the publisher have a decisive bearing upon the disposition of the publisher's first stated ground of demurrer. The declaration is sufficient and adequate in so far as the publisher alone is concerned. The publisher may not object, nor does it, to the failure to set forth a cause of action against its codefendants. The rule is stated in 6 *Ency. of Pleading and Practice,* page 310, as follows:

> "*For Misjoinder of Defendants*—Where there is a misjoinder of defendants, only the party defendant so misjoined should demur. And when a complaint against several defendants fails to state a cause of action against one of them, he alone may demur, and not his codefendants."

See also *Wood* v. *Decoster,* 66 Me. 542; 71 *C. J. S.* 424, Sec. 217; 41 *Am. Jur.* 454, Sec. 230.

The objection by the publisher is that the three defendants are jointly charged with libel under circumstances which make such a charge impossible.

Since no case is stated against the staff writer and the photographer, and thus no charge of joint liability, the objection is unfounded. It is sufficient, unless and until the declaration is amended, only to mention two principles of law. First, two or more defendants may be joined in an action for publishing a libel. 1 *Chitty on Pleadings*, (16th American Ed.) 127; *Gould on Pleading*, 3rd Ed. 210; 53 *C. J. S.* 243, Sec. 159; 33 *Am. Jur.* 186, Sec. 198, and cases cited; *Miller* v. *Butler*, 6 Cush. (60 Mass.) 71, 52 *Am. Dec.* 768. The case of *Gordon, pro ami* v. *Lee and Scannell*, 133 Me. 361, 178 A. 353, cited by the publisher, in illustrating the differences between joint and independent tort-feasors does not decide otherwise. The court there held the "pleading sets forth not a mere misjoinder of parties, but a misjoinder of causes of action," which is a situation not here existing. Second, when liability of a principal rests solely upon *respondeat superior*, the principal and agent cannot be sued jointly. *Campbell* v. *Portland Sugar Co.*, 62 Me. 552; *Hobbs* v. *Hurley*, 117 Me. 449, 104 A. 815; 35 *Am. Jur.* 1028, Sec. 592; 57 *C. J. S.* 350, Sec. 579.

We turn from questions involving parties to issues more closely associated with the merits. The publisher strenuously urges that the plaintiff should have made a copy of the photograph a part of her declaration and that for lack thereof the declaration is subject to demurrer. Only with the photograph before the court, the argument runs, can it be determined whether as a matter of law the defamatory matter can be held applicable to the plaintiff, and further the photograph is available to this plaintiff without appreciable effort. It is readily understandable that a picture is worth more than words, and also that proof at trial may not match the words of a declaration. We are of course

considering the problem from the viewpoint of the court. Obviously attaching a copy of the photograph to the declaration would give no new information to the defendants or any of them. Granting that the photograph would prove helpful in deciding the issues here presented, yet we are not prepared to say that a photograph may not adequately be described in words. We do not say that it would be improper to attach a copy of a photograph to the declaration under the circumstances of this case, but only that a copy is not an essential ingredient of good pleading. See 33 *Am. Jur.* 214, Sec. 237, and authorities cited.

The need of a copy of the photograph for an intelligent understanding of the pleadings could have been brought to the attention of the court below by a motion for specifications or for further particulars. *Nadeau* v. *Fogg,* 145 Me. 10, 70 A. (2nd) 730. Such a motion, we believe, is better designed to correct uncertainties of this nature than a demurrer.

There is left only the question of whether the alleged defamatory matter was published of and concerning the plaintiff. Does the declaration pose a doubt whether the plaintiff is the person defamed? Could reasonable men find, assuming the truth of the declaration, that the defamatory matter applied to the plaintiff? Could reasonable men find that the Imperial Cafe shown in the photograph was the Calumet Club? If such questions are answered in the affirmative, the *declaration* is sufficient. The decisive answer must come from the finders of fact. *Macurda* v. *Lewiston Journal,* 109 Me. 53, 82 A. 438; *Chapman* v. *Gannett,* 132 Me. 389, 171 A. 397; 53 *C. J. S.* 341, Sec. 224.

It will serve no useful purpose to discuss in detail the declaration. The publisher calls to our attention that the article does not mention the Imperial Cafe, and that the only connection between the Imperial Cafe and the Calumet Club is drawn from the narrative caption under the photograph.

The photograph is stated in the declaration to be "a picture or photo of the front of the Imperial Cafe, the sign with the words 'Imperial Cafe' being legible thereon, with the numeral 4 appearing in the lower left corner of said picture of the Imperial Cafe." The narrative caption says that "In photo Number 4 is where the Calumet Club, largest gambling place in the mill city, was located at 17 Alfred Street, next door to the Salvation Army." The declaration asserts that the Imperial Cafe is located on Alfred Street next door to the Salvation Army without stating the number of the street. The article as set forth in the declaration reads in part:

> "Around the corner from Main Street just a few steps to 17 Alfred Street and you come to the Calumet Club, (meaning the Imperial Cafe as shown in the photograph 4 on said page 4) the big joint, (meaning the largest house where extensive illegal gambling was conducted) the place where the shipyard workers dropped big rolls (meaning lost large sums of money by illegal gambling)."

The daily newspaper is read in the haste of daily living. The reader can hardly be expected with studious care to search out and to recognize delicate shades in meaning and application of the printed word and picture. In reading the declaration we are of the view that the plaintiff fairly set forth the application of the material to her. We find no error in the declaration on this score.

*Exceptions to overruling of pleas in abatement by each defendant overruled.*

*Exceptions to overruling of special demurrers by defendants Dawson and Olson sustained with costs.*

*Exceptions to overruling of special demurrer by defendant Gannett Publishing Company overruled with costs.*