114

STATE OF MAINE
*vs.*
FRANK POTTS, HATTIE POTTS
AND
THOMAS J. POTTS
(Two cases)

Oxford.    Opinion, August 12, 1958.

*David R. Hastings,* for plaintiff.

*Berman & Berman,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.  SIDDALL, J., did not sit.

WILLIAMSON, C. J. The validity of an indictment for subornation of perjury is here tested on exceptions to the overruling of the demurrer of respondents Frank and Hattie Potts. By agreement of the parties, of which we approve, our decision in the instant case will govern a second case against the same respondents raising identical issues on an indictment substantially like that in the record before us except for the name of the suborned witness.

The pertinent statutes found in R. S., c. 135 read:

"Sec. 1. **Perjury; subornation of perjury, definitions.**—Whoever, when required to tell the truth on oath or affirmation lawfully administered, willfully and corruptly swears or affirms falsely to a material matter, in a proceeding before any court, tribunal or officer created by law, or in relation to which an oath or affirmation is authorized by law, is guilty of perjury; and whoever procures another to commit perjury is guilty of subornation of perjury; and shall be punished. . ."

"Sec. 2. **Attempted subornation of perjury.**—Whoever willfully and corruptly endeavors to incite or procure another to commit perjury, although it is not committed, shall be punished. . ."

"Sec. 4. **Indictment.**—Indictments against persons for committing perjury before any court or tribunal drawn substantially as hereinafter provided are sufficient in law, viz.: '. . . that A.B. . . appeared as a witness in a proceeding in which C.D. and E.F. were parties, then and there being heard before a tribunal of competent jurisdiction, and committed the crime of perjury, by testifying as follows:' (here set out the matter sworn to and alleged to be false,) 'which said testimony was material to the issue then and there pending in said proceeding, .'."

The respondents place their objections to the indictment on five grounds.

FIRST: In the indictment the perjury of the suborned witness, an element essential to the offense, is set forth sub-

stantially in the language of the statutory form of an indictment for perjury under Section 4. The respondents urge that all of the elements of common law perjury must appear in the indictment and that the language of Section 4 is insufficient.

The statutory form of indictment was originally authorized in Laws of 1865, c. 324, § 1 (now Sec. 4 *supra*). Present Sections 1 and 2 were then in effect. (R. S., 1857, c. 122, §§ 1 and 2.) In 1871 the court upheld the validity of the statutory form of indictment and well stated the underlying reasons for the 1865 law as follows:

> "The respondent demurs to the indictment against him for perjury. It is very clear that the indictment is bad in many particulars, if considered under the old rules of the common law, or of our former practice and decisions. Indeed, the criminal pleader found great difficulty in so framing an indictment for perjury, that it could stand the searching examination and technical objections thereupon raised by astute counsel." *State* v. *Corson,* 59 Me. 137, 139.

The position of the respondents is that, although A may be indicted for perjury on the statutory form, nevertheless B may not be indicted for procuring A to commit the same perjury unless the perjury is described in a manner discarded since 1865.

Section 4 is not in our opinion so limited in operation to the cause of perjury alone. The purpose of the 1865 law was to simplify criminal procedure. Every reason for legislative action to bring about such a desirable result in perjury applied with equal force in subornation of perjury. The Legislature did not intend such a niggardly reform as is suggested by the respondents. We hold the commission of perjury by the suborned witness is sufficiently set forth in the indictment.

SECOND: The second point of the respondents is that the indictment fails to allege the respondents knew that the suborned witness knew the testimony was false. The rule is stated in *Niehoff* v. *Sahagian,* 149 Me. 396, 398, 103 A. (2nd) 211:

> "In order to constitute subornation of perjury 'Both the suborner and the suborned must, as elements of the offense, know the testimony to be false, and the former must be aware that the latter so knows it, otherwise there is not the needful corruption.' 2 Bishop's New Criminal Law, 690, Sec. 1197, a.2."

The indictment reads in part:

> ". . . that. . . on the said twenty-ninth day of April, A.D. 1957, at said Paris, the said Frank Potts and the said Hattie Potts, and the said Thomas J. Potts, and the said Louise Turner, and each of them, in truth and in fact, well knew that the matters to be given in evidence by the said Louise Turner, of the substance and to the effect aforesaid, were false and untrue, and *that said matters when given in evidence would be corruptly and willfully false and untrue.*" (Emphasis supplied.)

The indictment clearly charges that both the suborners and the suborned knew the testimony to be false, "but (say the respondents in their brief) there is no direct averment that the defendants, Potts, knew that the witness, Louise Turner, knew that the testimony was false."

The answer to the problem is found in the words "corruptly and willfully false and untrue." The respondents and the witness knew (1) that the testimony would be false, and (2) that when given in evidence by the witness it would be "corruptly and willfully false and untrue." "Corruptly and willfully" refer to and establish the knowledge and intent of the witness. Unless the witness had knowledge of the falsity of the testimony, it would not be given "corruptly and willfully." In other words, a witness who will corruptly

and willfully give false and untrue testimony necessarily knows that the evidence is false and untrue.

It follows that the respondents, who had knowledge that the testimony would be "corruptly and willfully false and untrue," thereby had knowledge that the witness knew the testimony would be false.

THIRD: The third error charged is that "the indictment fails to properly allege that a proceedings were pending and the jurisdiction of the Court."

It sufficiently appears in the indictment that the procurement took place on April 29, 1957, after Thomas Potts was "bound over" on a complaint of rape in the Norway Municipal Court, and before he was indicted therefor in the Oxford Superior Court; and that the false testimony was given at the trial of Thomas Potts in the Superior Court for the alleged rape, plainly a proceeding in court within the meaning of Section 1.

The respondents assert, however, that there was no proceeding pending in the Superior Court on April 29th, and hence the offense of subornation of perjury is not stated in the indictment. In other words, the respondents say that the proceeding in which the perjury is committed must be pending when the acts of procurement occur. With this view we do not agree.

The proceeding in which perjury is committed must be a pending proceeding. This indeed is saying no more than that the testimony must be given in a proceeding described in Section 1. Without such testimony so given there can be neither perjury nor subornation.

In our view it is immaterial whether *State* v. *Thomas Potts* was a proceeding pending in the Superior Court when the procurement, in distinction from the perjury, took place. The evil reached by the statute is the procurement of per-

jury at a future time. To adopt the theory urged by the respondents would place an unwarranted premium on the completion of the process of procurement before the commencement of the proceeding in which the perjury occurs.

*State* v. *Joaquin,* 69 Me. 218, relied upon heavily by the respondents, does not meet the issue. The indictment in *Joaquin* it must be noted was not for subornation, but for attempted subornation under Section 2 (then R. S., 1871, c. 122, § 2). The court said, in sustaining a demurrer, at p. 219:

> "This indictment alleges that the respondent endeavored to procure another to commit perjury. The substance of the matter alleged is, that the respondent intended to commence a suit, or institute a proceeding, in which the perjury was to be committed.

> "We think the case is not reached by the statute on which the indictment is founded. The true rendering of the statute is, that a person shall be liable who endeavors to procure a person to swear falsely 'in a proceeding before any court, tribunal or officer created by law, or in relation to which an oath or affirmation is by law authorized.' The objection is that the suit or proceeding was not pending. It might never be commenced. Therefore it was an instigation to commit an offense upon a condition or contingency that might never happen. This was rather an ideal than a real offense, morally reprehensible no doubt, but not such as the law sees fit to notice."

In subornation, procurement by X is followed by perjury of Y. In attempted subornation, the endeavor of X to incite or procure the intended perjury by Y fails.

The elements of perjury must be charged and proved with reference to the committed perjury or the intended perjury as the case may be. In subornation no difficulty arises in charging perjury in a pending proceeding. In attempted

subornation, however, the proceedings in which the perjury is intended may or may not be pending. It is to this last situation that *Joaquin* is directed. For necessity of pendency of proceedings in attempted subornation of perjury see also 17 Am. and Eng. Anno. Cases 1182, commenting on the *Joaquin* case; *State* v. *Howard* (Mo.) 38 S. W. 908; 70 C. J. S., *Perjury* § 84; 41 Am. Jur., *Perjury* § 74.

In this view of the case it is unnecessary to consider whether *State* v. *Thomas Potts* was pending on April 29 when the procurement took place. The case was a pending proceeding when the perjury was committed, and thus Section 1 of the statute is satisfied.

FOURTH: The fourth claim is that the indictment fails for lack of proper allegation of the materiality of the false testimony.

The indictment reads:

> "Which said testimony was material to the issue then and there pending in said proceedings in that the aforesaid testimony was inconsistent with the presence of the said Thomas J. Potts at the time and place at which according to the theory of the State of Maine, as set forth during the said trial, the alleged crime of rape took place."

In the words, "which said testimony was material to the issue then and there pending in said proceedings . . .," the indictment follows the language of the statutory form of indictment for perjury under Section 4.

In FIRST, *supra,* we pointed out that the element of perjury may thus be properly set forth in an indictment for subornation. The important question is whether the remainder of the allegation shows that the testimony was not material.

In passing upon counts for perjury following the form in Section 4, our court stated the rule in *State* v. *Ela,* 91 Me. 309, 314, 39 A. 1001, as follows:

> "To constitute perjury the testimony must be material to the issue. While the statute requires only the allegation of materiality, yet if the recited testimony is clearly not material, the indictment defeats itself. It alleges a thing to be material, and shows on its face that it is not material. The allegation of materiality, though in the words of the statute, in such a case cannot save the indictment. This count is therefore bad."

See also 2 Wharton's Criminal Procedure (10th ed.) § 1096.

The allegation of the materiality of the false testimony was indeed strengthened, not weakened, by the words in explanation of the general statement. It is apparent from the indictment that the false testimony was given to furnish the respondent in the rape case with the comfort of an alibi. The materiality of an alibi cannot seriously be questioned.

FIFTH: The respondents contend, in the words of their brief, "This indictment is faulty because the state, having in the indictment alleged that all the quoted testimony was false and then excepting some of such testimony as true has failed to properly apprise the defendant of exactly what testimony is false and what is true."

In the indictment are allegations: (1) that the suborned witness committed "the crime of perjury by testifying as follows:" (setting forth the content of the testimony); (2) that "All of which the said Louise Turner then and there well knew to be false and untrue in that in truth and in fact the said Louise Turner was not in the company of the said Thomas J. Potts during any of the times and places and events described in the aforesaid testimony, and in that in truth and in fact the said Watson McAllister was not in

the company of said Thomas J. Potts during any of the times and places and events described in the aforesaid testimony save for such times and places and events described in the aforesaid testimony as took place prior to the time said Thomas J. Potts departed from the said home of the said Watson McAllister at approximately forty-five minutes after eleven o'clock of said evening, . ."

The indictment leaves no confusion between what is allegedly true or false testimony. *State* v. *Mahoney,* 115 Me. 251, 98 A. 750, in which the allegation of false testimony covered all of the testimony both true and false, differs from the instant case. Here the limitation upon the extent of the false testimony is plainly stated, and the basis for separation of the false testimony from the true is made clear and certain.

We come to the conclusion that the indictment is valid and the demurrer was properly overruled. In accordance with the agreement the entry in each case will be

*Exceptions overruled.*