WILLIAM H. NIEHOFF

*vs.*

HERMAN D. SAHAGIAN

Kennebec.    Opinion, January 14, 1954.

*Dubord & Dubord*, for plaintiff.

*Goodspeed & Goodspeed*, for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, WEBBER, JJ. TIRRELL, J., did not sit.

MERRILL, C. J. On exceptions. This is an action for slander. The amended declaration contains two counts. The first count alleges that the defendant slandered the plaintiff by falsely and maliciously accusing him of the crime of subornation of perjury by speaking of and concerning the plaintiff the following words:

"I had not wanted to admit on the stand in Portland, that I had committed a crime, since I had not

committed any. However, I was urged to do so by Bird and Assistant Attorney General William H. Niehoff. Bird and Niehoff told me that if I did not testify to a crime, then no crime could be proved against Papalos who would then fail to be convicted. So I went ahead and said on the witness stand that I had, in fact, committed a crime, after Bird and Niehoff had urged me to do so."

The second count alleges that the defendant did speak and publish of and concerning the plaintiff *in his capacity as an attorney-at-law* the same words above set forth and contains the further allegation that by means of said statements the defendant did falsely accuse the plaintiff of having committed the heinous crime of subornation of perjury.

In neither count is there a claim for special damages nor is there any allegation that the plaintiff suffered special damages because of the alleged slander.

The defendant filed a general demurrer to each count. These demurrers were sustained by the presiding justice and it is upon exceptions to these rulings of said justice that the case is now before this court.

Perjury and subornation of perjury are felonies and are defined in R. S. (1944), Chap. 122, Sec. 1 as follows:

"Whoever, when required to tell the truth on oath or affirmation lawfully administered, wilfully and corruptly swears or affirms falsely to a material matter, in a proceeding before any court, tribunal, or officer created by law, or in relation to which an oath or affirmation is authorized by law, is guilty of perjury; and whoever procures another to commit perjury is guilty of subornation of perjury;"

In order to constitute subornation of perjury "Both the suborner and the suborned must, as elements of the offense, know the testimony to be false, and the former must be aware that the latter so knows it, otherwise there is not

the needful corruption." 2 Bishop's New Criminal Law, 690, Sec. 1197, a. 2.

In order to be guilty of subornation of perjury it is not only necessary that the party suborned actually commit perjury but it is also necessary that the suborner knows that the testimony to be given will be false and that the one giving the same "will wilfully testify to a fact knowing it to be false." 41 Am. Jur. Page 41, Sec. 74.

As said in 70 C. J. S. Pages 549 and 550:

"It is essential to the offense of subornation of perjury that perjury, in all of its elements, shall have been committed by the suborned witness. * * *

In order to constitute subornation of perjury, it is essential that the suborner should have known or believed that the testimony would be false, that he should have known that the witness would testify willfully and corruptly with knowledge of its falsity, and that he should have knowingly and willfully induced or procured the witness to give such false testimony."

As said by the Massachusetts court with respect to the conduct of a defendant charged with subornation of perjury, in *Commonwealth* v. *Douglass*, 5 Met. 241, 244:

"The defendant might know, or believe—for he could not know with certainty—that the witness whom he called would testify as she did; and he might know that her testimony would be false; but if he did not know that she would willfully testify to a fact, knowing it to be false, he could not be convicted of the crime charged. If he did not know or believe that the witness intended to commit the crime of perjury, he could not be guilty of the crime of suborning her. To constitute perjury the witness must willfully testify falsely, knowing the testimony given to be false. 1 Hawk. c. 69, § 2. Bac. Ab. Perjury, A. 2 Russell on Crimes, (1st ed.) 1753. A witness, by mistake or defect of

> memory, may testify untruly without being guilty of perjury or any other crime. * * * To constitute subornation of perjury, the party charged must have procured the commission of the perjury, by inciting, instigating, or persuading the guilty party to commit the crime. The calling of a witness to testify, with the knowledge or belief that he will voluntarily testify falsely, is certainly not sufficient to constitute the crime of subornation of perjury."

See also Archbold's Criminal Pleading and Evidence, 4th American Edition, Page 545. May's Criminal Law, Page 130, Sec. 153.

It is essential to the crime of subornation of perjury that the suborner procured another to give testimony known by him and such other to be false and that such false testimony was in fact given. See 2 Wharton's Criminal Procedure, 10th Edition, 1516, Sec. 1071.

As said in 2 Wharton's Criminal Law, 1844, Sec. 1595:

> "To constitute subornation of perjury, which is an offense at common law, the party charged must procure the commission of the perjury, by inciting, instigating, or persuading the witness to commit the crime. Perjury must have been actually committed, and this must appear in the indictment. The suborner must be aware of the intended corruptness on part of the person suborned. Thus though a party, who is charged with subornation of perjury, knew that the testimony of a witness whom he called would be false, yet if he did not know that the witness would wilfully testify to a fact, knowing it to be false, he cannot be convicted of the crime charged."

Although it may not be necessary to constitute misconduct on the part of an attorney who procures a witness to testify to facts that are not true that the attorney be guilty of subornation of perjury in its technical sense, yet to con-

stitute misconduct on his part he must *at least* act corruptly and either know of the falsity of the testimony or other facts evidencing his bad faith in procuring the testimony to be given. The only fact stated in either count that would indicate that Niehoff acted corruptly in his office as an attorney-at-law is the statement in the inducement that he knew that Sahagian was not guilty of the offense the commission of which he was urged to testify, of which later.

The real issues between the parties are whether or not the language above set forth when spoken of and concerning the plaintiff by the defendant charged the plaintiff with having committed the crime of subornation of perjury, and whether or not it charged him with misconduct in his office as an attorney-at-law.

It is the position of the defendant that there is nothing in the language itself, which, standing alone, can be interpreted as a statement by the defendant that the plaintiff knew that the testimony to be given and actually given by Sahagian would be false.

The defendant's interpretation of the words standing alone is the correct one. This, however, is not necessarily fatal. Words perfectly innocent in and of themselves when spoken under certain circumstances may have an entirely different meaning. By inducement, colloquium *and* innuendo a plaintiff may show that words innocent in and of themselves interpreted in the light of the circumstances *under which and in reference to which* they were uttered or written constitute an accusation of crime or misconduct in his profession.

This court has so many times and so recently stated the essential elements of defamation by libel and by slander that it would be superfluous to repeat them *in extenso*. We said in *Barnes* v. *Trundy,* 31 Me. 321, 323:

> "Certain doctrines respecting the maintenance of actions for slanderous words spoken, may be re-

garded as so fully established as to preclude further debate or controversy.

Words in themselves actionable must charge some punishable offence, impute some disgraceful disease, or be spoken of the person in relation to some profession, occupation, or official station in which he was employed.

Words in themselves not actionable may be the foundation of an action by reason of some special damage occasioned by them."

See also, especially with respect to charges with respect to defamation of one in the conduct of his profession, *Orr* v. *Skofield,* 56 Me. 483, *Buck* v. *Hersey,* 31 Me. 558, and *Pattangall* v. *Mooers,* 113 Me. 412.

Furthermore, words innocent in and of themselves may be actionable because of the surrounding circumstances *under which and with relation to which* they are spoken. In other words, in this manner by the use of words innocent in and of themselves the speaker may accuse another of having committed a crime, or impute to him some matter in relation to his particular trade, vocation or profession which, if true, would render him unworthy of employment.

Unless the words standing alone in and of themselves, if true, are sufficient to charge the plaintiff with the commission of crime *and* unless they are necessarily inconsistent with the plaintiff's innocence of the crime alleged to have been charged thereby, the words are not actionable *per se* as charging the plaintiff with such crime. Likewise, the same general principle applies to allegations with respect to and of the plaintiff's conduct in relation to some matter relating to his particular trade, profession or vocation. Unless the words standing alone in and of themselves, if true, are sufficient to impute to him some matter in connection with his trade, profession or vocation which would render him unworthy of employment, *and* unless, if true,

they are necessarily inconsistent with his innocence of such matter rendering him unworthy of employment, the words are not actionable *per se* as spoken of the plaintiff of and in relation to his trade, vocation or profession.

In the very recent case of *Judkins* v. *Buckland*, 149 Me. 59, 63 and 64, we said:

> " 'A declaration for slander ordinarily contains, as here, (1) the inducement, or statement of the alleged matter out of which the charge arose (2) the colloquium, or averment that the words were used concerning the plaintiff (3) and the innuendo, or meaning placed by the plaintiff upon the language of the defendant. 2 Greenleaf Ev. (4th Ed.) "Libel and Slander," 405; Starkie on Slander "Averments," 262; 37 C.J. "Libel and Slander," 22, Par. 328; *Patterson* v. *Wilkinson*, 55 Me. 42; *Bradburg* v. *Segal*, 121 Me. 146; *Brown* v. *Rouillard*, 117 Me. 55.' "
> \* \* \*
>
> "The published article in libel, and the words in slander, must be construed, stripped of innuendo, insinuation, colloquium, and explanatory circumstances. Words must be taken in their ordinary and usual meaning because words may convey one idea to one person and another idea to another. 'It is not the intent of the speaker or author, or even of the understanding of the plaintiff, but of the understanding of those to whom the words are addressed and of the natural and probable effect of the words upon them.' *Chapman* v. *Gannett*, 132 Me. 389, 391; *Bradburg* v. *Segal*, 121 Me. 146; *Nichols* v. *Sonia*, 114 Me. 545."

It is to be noted in the first passage above quoted the word "colloquium" is used only in the limited meaning attributed therein thereto, to wit, "(2) the colloquium, or averment that the words were used concerning the plaintiff" and it is undoubtedly in this same limited sense only that the word "colloquium" is used in the second passage above quoted. There is, however, another sense in which

the word "colloquium" is used in relation to allegations in the pleadings in actions for libel and slander. Colloquium is defined in Ballentine's Law Dictionary as follows:

> "*colloquium.* That part of a declaration or complaint in an action for libel or slander consisting of a direct allegation that the language published was concerning the plaintiff or concerning the plaintiff and his affairs, or *concerning the plaintiff and facts alleged as inducement.* See 33 Am. Jur. 218." (Emphasis ours.)

In Bouvier's Law Dictionary, Baldwin's Century Edition, it is said at page 185 et seq.:

> "COLLOQUIUM In Pleading. A general averment in an action for slander connecting the whole publication with the previous statement. 1 Stark. Sl. 431; Heard, Lib. & Sl. 228; or stating that the whole publication applies to the plaintiff, and to the extrinsic matters alleged in his declaration. 1 Greenl. Ev. § 417.
>
> An averment that the words were spoken 'of or concerning' the plaintiff, where the words are actionable in themselves. 6 Term 162; 16 Pick. 132; Cro. Jac. 674; Heard Lib. & Sl. § 212; 1 Greenl. Ev. § 417; or where the injurious meaning which the plaintiff assigns to the words results from some extrinsic matter, or of and concerning, or with reference to, such matter. 2 Pick. 328; 16 *id.* 1; Heard, Lib. & Sl. §§ 212, 217; 11 M. & W. 287.
>
> An averment that the words in question are spoken of or concerning some usage, report, or fact which gives to words otherwise indifferent the peculiar defamatory meaning assigned to them. Shaw, C. J., 16 Pick. 6.
>
> Whenever words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact, this fact must be averred in a traversable form, which averment is called the *inducement.* There must then be a *colloquium* averring that the slanderous words were spoken of or concerning this

fact. Then the word *'meaning'*, or *innuendo*, is used to connect the matters thus introduced by averments and *colloquia* with the particular words laid, showing their identity and drawing what is then the legal inference from the whole declaration, that such was under the circumstances thus set out, the meaning of the words used. Per Shaw, C.J.; 16 Pick. 6. By the Com. L. Proc. Act (1852) in England the colloquium has been rendered unnecessary. See INNUENDO; Odger, Lib. & Sl."

It is in this broader meaning of the word "colloquium" that this court used the same in *Patterson* v. *Wilkinson*, 55 Me. 42, 43, 45, when it said:

"The words spoken, not importing a crime, and not being upon their face slanderous, the rule as to declaring is thus stated by Chitty, in his work on Pleading, vol. 1, p. 342, 'When the words do not naturally and *per se* convey the meaning the plaintiff would wish to assign to them, or are ambiguous and equivocal, and require explanation by reference to extrinsic matter, to show that they are actionable, it must not only be stated that such matter existed, but also that the words were *spoken of and concerning it.'* The count does not indicate that any conversation was had in reference to the misconduct of the plaintiff's sister. The fact of such misconduct is stated, but in what is technically termed the *colloquium*, it is not averred that the words were spoken in relation to such misconduct. If spoken generally, without any such reference, they were obviously not slanderous. 'When the words spoken,' observes LORD ELLENBOROUGH, in Hawks v. Hawkey, 8 East, 431, 'do not in themselves naturally convey the meaning imputed by the *innuendo*, but also when they are ambiguous and equivocal, and require explanation by reference to some extrinsic matter to make them actionable, it must not only be predicated that such matter existed, but also that the words were spoken *of and concerning that matter.'* In *Sturtivant* v. *Root*, 7 Foster, 69, GILCHRIST, C.J., says, a *'colloquium* serves to show that the

words were spoken in reference to the matter of the averment. An innuendo is explanatory *of the subject matter sufficiently expressed before, and it is explanatory of such matter only;* for it cannot extend or limit the sense of the words beyond their own meaning, unless something is put upon the record for it to explain.' So, in *Carter* v. *Andrews,* 16 Pick., 1, Shaw, C. J., says, — 'If the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact, the plaintiff must undertake to prove that fact, and the defendant must be at liberty to disprove it. The fact must be averred in a traversable form, with a proper *colloquium,* to wit, an averment, that the words in question are spoken *of and concerning* such usage or report or fact, whatever it is, which gives to words, otherwise indifferent, the particular defamatory meaning imputed to them.' For aught that appears in the declaration preceding the innuendo, the conversation might have had reference to the good and not to the bad conduct of the plaintiff's sister, and, if so, the words are entirely unobjectionable."

This same principle is discussed *in extenso* and is reaffirmed by the case of *Brown* v. *Rouillard,* 117 Me. 55, 59, 60. This court therein quoted from *Brettun* v. *Anthony,* 103 Mass. 37, as follows:

" 'Words in themselves harmless, or of doubtful import, become slanderous when used with reference to known existing facts and circumstances in such manner as to convey to the hearer a charge of crime. This limited protection to reputation the law attempts to give against indirect verbal imputation. It must however be made apparent, by suitable averments in the declaration, that the language employed was used by the defendant slanderously, to the extent stated; and the words, when taken in their plain and natural import, must be capable of the meaning attributed to them.'

'The facts which determine the alleged meaning are usually stated in a prefatory manner, followed

by a positive averment, or colloquium, that the discourse was of and concerning these circumstances. Whatever the particular order of their arrangement, these averments become material and traversable, and it must appear from them that the words impute the alleged offence. It is a further elementary principle, that the colloquium must extend to the whole of the prefatory inducement, necessary to render the words actionable.'

'An omission in the respect indicated will not be aided by mere innuendoes, whose office cannot add to or extend the sense or effect of the words set forth, or refer to anything not properly alleged in the declaration. *Snell* v. *Snow*, 13 Met., 278. General allegations, that the defendant charged the plaintiff, falsely and maliciously, with the commission of a particular crime, accompanied by innuendoes, however broad and sweeping, will not aid a declaration otherwise imperfect. Thus, the act of burning one's own property becomes a crime only under special circumstances, as when done for the purpose of defrauding the insurers, or in violation of the provisions of the bankrupt act. Conversation about such burning, otherwise innocent, or of doubtful import, may be made actionable, if reference was had in it to these special circumstances, in such manner as necessarily to impute the crime. And the declaration is defective, if it does not set this forth by suitable averments.'

'It is no answer, that facts and circumstances enough are stated, unless it is also averred that the speech of the defendant was with reference to such facts, or so many of them as are essential elements in the crime. Nor is this want supplied by alleging that the defendant, at the time of speaking the words, had knowledge of the particular circumstances which made the act of which he speaks criminal. He is to be charged only for a wrong actually committed, irrespectively of his secret knowledge or intent. He is responsible only for the meaning which the words used by him, reasonably interpreted, convey to the understanding

of the persons in whose presence they were uttered. See *Fowle* v. *Robbins*, 12 Mass., 498; *Bloss* v. *Tobey*, 2 Pick., 320; *Carter* v. *Andrews*, 16 Pick., 1, 5; *Sweetapple* v. *Jesse*, 5 B. & Ad., 27.' "

Applying these rules to the amended declaration, each count is demurrable. The words upon which the action is founded not being actionable *per se* because they neither directly nor indirectly allege that the plaintiff knew of the falsity of the testimony which they charge he induced Sahagian to give, the plaintiff sought to make them actionable by setting forth the plaintiff's knowledge thereof by an inducement. If, without so holding, but for the purpose of argument only we grant that the counts each contain a sufficient inducement with respect to such knowledge on the part of the plaintiff, yet each of them is insufficient when tested by the foregoing rules. Although the fact of such guilty knowledge on the part of the plaintiff is stated in the inducement, in neither count is it averred that the words alleged to have been spoken were spoken of or concerning the same. It is no answer, that facts and circumstances enough are stated, unless it is also averred that the words of the defendant set forth in the declaration and alleged to be slanderous were spoken with reference to such facts, or so many of them as are essential elements of the crime.

If the words were spoken generally, and without any such reference, they were obviously not slanderous *per se* under the rules above set forth. The acts attributed to the plaintiff, by the words alleged to have been spoken if performed by the plaintiff in good faith and without knowledge of the falsity of the testimony to be given by the defendant neither constituted subornation of perjury nor any other crime, nor did they constitute misconduct upon the part of the plaintiff in his office as an attorney-at-law.

Although both counts in the declaration contain a general charge that the defendant accused the plaintiff of instigat-

ing Sahagian to testify that he was guilty of a crime when the plaintiff knew he was not guilty thereof, the effect of such general allegation is limited by the further allegation setting forth the false, scandalous and defamatory words alleged to have been spoken of and concerning the plaintiff, to wit, the words hereinbefore set forth verbatim.

A declaration alleging that the defendant falsely charged the plaintiff with the commission of a crime *eo nomine* is sufficient without setting out the words by which it is claimed the crime was charged. *True* v. *Plumley*, 36 Me. 466, *Kimball* v. *Page*, 96 Me. 487, *Burbank* v. *Horn*, 39 Me. 233. In such case, however, the defendant is entitled, on motion, to a specification of the words which the plaintiff claims the defendant used in making the charge of crime. When such specification is filed the words become a part of the declaration. If the words alone are specified and they are *per se* insufficient to import the commission of the crime charged generally, the declaration is demurrable. *Brown* v. *Rouillard*, 117 Me. 55. In such case it is necessary by inducement and colloquium to show that the words do in fact charge the crime.

In principle there is no difference whether the words are supplied by a specification as in *Brown* v. *Rouillard, supra,* or as here, are included in the declaration as the means by which the crime or misconduct is charged. In either case if the words are not slanderous *per se* unless made so by proper inducement and colloquium the pleading is insufficient and is demurrable.

In this case the words set forth in the first count are insufficient in and of themselves to constitute a charge of crime as alleged. Nor are the words made sufficient therefor by inducement *and* colloquium. The words in the second count are insufficient to charge the plaintiff with misconduct with respect to his profession. Nor are the words made sufficient therefor by inducement *and* colloquium. Un-

der the well established principles declared in *Patterson* v. *Wilkinson*, 55 Me. 42, and in *Brown* v. *Rouillard*, 117 Me. 55, both counts were demurrable. The entry must be

*Exceptions overruled.*