GEORGE POWERS

*vs.*

DURGIN-SNOW PUBLISHING CO., INC.

GEORGE POWERS

*vs.*

CLIFFORD N. OLESEN

Cumberland.   Opinion, August 7, 1958.

*Jacobson & Jacobson,* for plaintiff.

*Arthur A. Peabody,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J.   These two actions of libel arise from the publication of an article written by defendant Olesen

in the weekly newspaper owned and published by defendant Durgin-Snow Publishing Co., Inc. The cases are before us on exceptions in each instance to the overruling of defendant's demurrer and present identical issues. For convenience we will refer only to the case against the publisher.

The declaration reads in part:

> ". . . the defendant . . . with intent to injure, degrade and disgrace the Plaintiff and bring him into hatred, contempt, ridicule and distrust and to deprive him of the benefit of public confidence, and subject him to the scoffs and sneers of society, did maliciously, willfully, recklessly and falsely write, compose, print, publish, circulate and sell in said Westbrook American the following false, scandalous and defamatory article appearing on Page Six (6) thereof under the heading: "MILLING AROUND" by Sunny Olesen:

> "George Powers, Coating Department, is a fellow who believes in looking ahead. He's also a classic example of typical Yankee thrift. Take his idea on caskets now - - George says, ' "Why spend a lot of money for a casket when, for $15 or $20 you can build one, yourself. After all, your family can always use the money you've saved in that one item, alone." '

> "Suiting the action to the word, George is now busily sawing and hammering away on his own tailored-to-fit coffin. And, as a sort of package deal, he's making plans to dig the space for it next.

> "From all outward appearances, this thrifty, if slightly ghoulish gent can take his time on his project, because. . .

> "He turned (approximately) 35 on his last birthday." (Innuendoes omitted)

> \* \* \* \* \* \* \* \*

> "And the Plaintiff avers that by writing, printing, publishing, circulating and selling the papers containing the above false, malicious, defamatory and scandalous article as aforesaid, the defendant

has greatly injured the Plaintiff in his good name and reputation, has deprived him of public confidence, and exposed him and his family to public hatred, contempt and ridicule, and the Plaintiff has suffered great pain and distress of body and mind, has been shunned by many of his former acquaintances, and in his general reputation has been otherwise greatly injured and prejudiced, . ."

The first ground or reason for the exception stated below is without merit.

"1. The declaration on its face shows the article to be part of a column entitled "Milling Around". The declaration on its face indicates that said column is not a standard news item. Therefore the defendant claims that the declaration should set forth the entire column in order that the court can determine the nature of the words alleged to be libellous in their relation to the whole column."

It is well established law "that the article must be read as a whole, taking into account its wording, the nature and use of headlines, and any other methods employed to give special emphasis in order to determine its natural and probable impact upon the minds of newspaper readers." *Cross* v. *Guy Gannett Pub. Co.*, 151 Me. 491, 494, 121 A. (2nd) 355; *Thompson* v. *Sun Pub. Co.*, 91 Me. 203, 39 A. 556; *Macurda* v. *Lewiston Journal*, 109 Me. 53, 57, 82 A. 438; *Bearce* v. *Bass*, 88 Me. 521, 544, 34 A. 411; *Tillson* v. *Robbins*, 68 Me. 295.

The declaration meets the test and is not demurrable. On its face indeed the article in question is stated at length. No loose ends are apparent which make it difficult to understand the precise nature of plaintiff's complaint. The defendant should have raised the issue not by demurrer but by a motion for specifications or further particulars. The court below would then have determined whether or not there was need to include the entire column for an intelligent

understanding of the pleadings. Illustrative cases are: *Niehoff* v. *Sahagian*, 149 Me. 396, 103 A. (2nd) 211; *Sinclair* v. *Gannett Publisher, et al.*, 148 Me. 229, 91 A. (2nd) 551; *Brown* v. *Rouillard*, 117 Me. 55, 102 A. 701. See also 53 C. J. S., *Libel and Slander* § 184; 33 Am. Jur., *Libel and Slander* § 251.

The rules governing the remaining issues on the demurrer are stated in *Brown* v. *Guy Gannett Publishing Co.*, 147 Me. 3, 4, 82 A. (2nd) 797:

> "By its demurrer the defendant has admitted the truth of each and every one of the foregoing allegations."
>
> \* \* \* \* \* \* \* \* \* \* \*
>
> "It is not necessary in order for printed words to be libelous that they naturally tend to expose plaintiff to public hatred *and* contempt *and* ridicule, *and* deprive him of the benefit of public confidence and social intercourse. *It is sufficient if they naturally tend to bring about any one of the foregoing consequences.* The governing principle of law is stated in the alternative or disjunctive, *not* in the conjunctive."

In our view the article naturally tended to expose the plaintiff to laughter tinged with contempt, or in other words to ridicule. "Ridicule" has been defined as follows: "The act or practice of exciting laughter at a person or thing by means of jesting words, caricature, mocking, etc.; remarks, etc. intended to show one in an amusing or absurd light; slightly contemptuous banter; as, an object of ridicule; to suffer from ridicule; cutting ridicule." Webster's New International Dictionary (2d ed.) Unabridged.

The reader is given the impression that the plaintiff is at best an odd or unusual character acting in a manner far removed from the ordinary standards of the day. The man who builds his own coffin and is planning to dig his own grave is described as a "thrifty, if slightly ghoulish gent."

The reader may well laugh with the writer at the victim with a laughter mixed with contempt.

The defendant does not escape liability on the ground the article was written in jest, if such was the fact. The joke that goes too far and causes harm, not laughter, is within our common experience.

> "Of course, the mere fact that the print was a jest does not put the defendant out of peril. Ridicule may ruin a reputation or a business." *Lamberti* v. *Sun Printing & Publishing Ass'n.*, 97 N.Y.S. 694, 695.

In *Triggs* v. *Sun Printing & Publishing Ass'n.*, 71 N. E. 739, at p. 742, 103 Am. St. Rep. 841, 66 L. R. A. 612, the New York Court said:

> "It is likewise claimed by the respondent that these articles were written in jest, and hence that it is not liable to the plaintiff for the injury he has sustained. It is, perhaps, possible that the defendant published the articles in question as a jest, yet they do not disclose that, but are a scathing denunciation, ridiculing the plaintiff. If, however, they can be regarded as having been published as a jest, then it should be said that, however desirable it may be that the readers of, and the writers for, the public prints shall be amused, it is manifest that neither such readers nor writers should be furnished such amusement at the expense of the reputation or business of another. In the language of Joy, C. B.: 'The principle is clear that a person shall not be allowed to murder another's reputation in jest;' or, in the words of Smith, B., in the same case: 'If a man in jest conveys a serious imputation, he jests at his peril.' Donoghue v. Hayes (1831), Hayes Irish Exchequer, 265, 266. We are of the opinion that one assaulting the reputation or business of another in a public newspaper cannot justify it upon the ground that it was a mere jest, unless it is perfectly manifest from the language employed that it could in no respect be re-

garded as an attack upon the reputation or business of the person to whom it related."

See also Harper and James on Torts (1956 ed.) § 5.2.

The defendant calls attention to *Cohen* v. *New York Times Co.*, 138 N. Y. S. 206, holding a false death notice was not libelous *per se* and sustaining a demurrer to the complaint. In *Cohen* there was a "bare item of news in a newspaper." Here we have not a news item, but an article directing our attention to the peculiarities of the plaintiff.

Of course not every jest is a libel. We must not be too sensitive. In the words of Judge Learned Hand, in *Burton* v. *Crowell Pub. Co.*, CCA Second Circuit, 82 F. (2nd) 154, "A man must not be too thin-skinned or a self-important prig." We cannot, however, say that the article "could in no respect be regarded as an attack upon the reputation" of the plaintiff. *Triggs* v. *Sun Printing & Publishing Ass'n.*, *supra.*

We hold, the article, if believed, has a natural tendency to expose the plaintiff to ridicule that is more than trivial. It thus is libelous *per se* and no allegation of special damages is necessary to sustain the action. *Tillson* v. *Robbins, supra.* The declaration is sufficient. The attack by demurrer fails.

The entry in each case will be

*Exceptions overruled.*