Herman **COHEN**

v.

Warren E. **BOWDOIN** et al.

Supreme Judicial Court of Maine.

March 2, 1972.

William P. Donahue, Biddeford, for plaintiff.

Smith, Elliott & Wood, by Charles W. Smith, Saco, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiff appeals to this Court a decision by a Justice of the Superior Court which dismissed the complaint of plaintiff with prejudice on the ground that it fails to state a claim upon which relief can be granted.

We sustain the appeal.

The complaint contains confusing surplusage and lacks precision and clarity in the allegations which deal with matters which can be deemed essential. We present those portions of the complaint which most clearly state its fundamental import.

"1. The plaintiff, Herman Cohen, now and during his lifetime, has been an honest, upright person and has always honorably and honestly conducted himself and has been of good fame and reputation personally and in his business.

"2. The defendant, Donald V. Dulac, on March 3, 1968, and since that time, has been and is Town Manager of, and Richard J. Brown, Richard V. Bibber, Warren E. Bowdoin, and Hugh Googins have been and are Selectmen of, said Town of Kennebunk.

"3. That the defendants have conspired, since March 3, 1968, to maliciously defame and libel the plaintiff.

"4. That at a meeting of the Board of Selectmen and said Town Manager, held on September 19, 1968, the plaintiff was denied his legal right to make a tape recording of the minutes of said meeting, although the tape recorder of the defendant Bowdoin is used for that purpose.

"5. That at a meeting of the Planning Board of said Kennebunk, held on September 22, 1968, the plaintiff was permitted to have a tape recording of said meeting, except when the defendant, Dulac, spoke at said meeting. At this meeting, . . . the plaintiff did not tell Dulac [nor did he at any other time] that he had been advised by the Attorney General of the State of Maine that he could legally tape board meetings, nor was such statement made by the plaintiff at said Planning Board meeting.

"6. That at a meeting of the Board of Selectmen held September 26, 1968, attended by the plaintiff and defendants, the remarks of Town Counsel, were adopted and incorporated in the record, and the false and malicious accusation that the plaintiff had lied to the defendant, Dulac, by said Dulac, also were adopted and incorporated in the record, together with the remarks of Mike Tranci, as appears in Exhibit 'A:', attached hereto and incorporated herein by reference.[1]

---

1. Exhibit "A" is a partial record of the Selectmen's Meeting of September 26, 1968. In substance, it corroborates that the Town Counsel had asked to have certain remarks made part of the record of the meeting. Town Counsel said that: (1) "Herman Cohen stated at a public meeting of the planning board that he had been advised by the Atty. General of the State of Maine that he could legally tape board meetings;" and (2) Town Counsel was aware of his "own knowledge" that private citizens are not given rulings by the Attorney General's Office—a fact verified in the case of Mr. Cohen, said Town Counsel, by a telegram which had been received from George C. West in his capacity as Deputy Attorney General and dated September 26, 1968. In this telegram it was also stated that the office of the Attorney General had "not advised Herman Cohen or his representatives that he could make tape recordings of meetings of town council."

The partial record of the Selectmen's Meeting further showed that "Mr. Dulac directed a question at Herman Cohen. 'Mr. Cohen, did you lie to me Monday

"7. That at a meeting of the Board of Selectmen, held on October 1, 1968, it was 'Voted to commend Mrs. Cashen and the Biddeford Journal for their accurate news coverage of the meeting of the Board of Selectmen of the Town of Kennebunk on September 26, 1968', which news item appeared in the September 27, 1968, issue of the said newspaper, a copy of said article, marked Exhibit B, is attached hereto and incorporated herein by reference.[2] The newspaper article fails to report the recorded remarks of Mike Tranci explanatory of the telephone calls referred to in the remarks of the Town Counsel, together with other omitted significant facts.

"8. That the news reporter, Mrs. Cashen, did not attend said meeting of September 25, 1968, and the news item was written at her home from the tape recording and minutes supplied by the defendant, Brown, in furtherance of the conspiracy to defame and libel the plaintiff.

"9. That said defendants, Brown, Bibber, and Bowdoin, were unsuccessful in their attempts to have the news item published in the Biddeford Journal, republished in the York County Coast Star, wherein their actions were reported by the October 2, 1968, issue of the Star, a copy of which is marked Exhibit 'C', attached hereto and incorporated herein by reference.[3]

\*   \*   \*   \*   \*   \*

"12. That the plaintiff, by reason of said conspiracy to defame and libel said plaintiff, has been brought into public shame and disgrace, by reason of all which facts set forth the plaintiff has been greatly injured in his personal and business reputation, and he has suffered great pain of body and of mind, and has otherwise injured and damaged and is entitled to compensatory and exemplary damages. . . . . "

We conclude that the allegations of the complaint are sufficient to charge against each defendant legal responsibility for the tort of defamation constituted by libel.

By this conclusion sustaining the complaint as stating a cause of action for libel we simultaneously reject a basic contention of plaintiff—formulated by the presiding Justice (in his pre-trial order) to be that plaintiff

". . . asserts he does not have to prove that what was stated and published was in fact libel if . . . they conspired and agreed together to libel, whether they succeeded or not,"—

and preserved as an issue on appeal by plaintiff's designation that the Justice in the Superior Court erred in concluding

"that the complaint failed to state an actionable conspiracy by the defendants."

■ While the law of this State recognizes "conspiracy" constituted as to gravamen by combination, or concert of action and planning, for an unlawful purpose or for use of unlawful means (and regardless of whether the unlawful purpose or means is accomplished) as a crime, State v.

night?' Mr. Cohen answered, 'I am not on trial here.' Mr. Dulac responded, 'I have never been able to prove that you lied, now I have no choice but to say that you lied to me.' "

2. Plaintiff's Exhibit "B" is offered as a reproduction of a portion of Page 3 of the Biddeford-Saco Journal as published on Friday, September 27, 1968. It is a news story fundamentally presenting the contents, as above summarized, of the partial minutes of the Selectmen's Meeting of September 26, 1968.

3. Exhibit "C" which is a reproduction of Page 7 of the York County Coast Star as published on Wednesday, October 2, 1968 provides the information that the defendant Bowdoin had carried with him a tear sheet of the article which had appeared in the Biddeford Journal and describes the efforts of the defendant Bowdoin, accompanied by the defendants Bibber and Brown, to have the York County Coast Star reproduce the article verbatim.

Chick, Me., 263 A.2d 71 (1970) and cases therein cited, this Court has explicitly decided as general law that "conspiracy" fails as the basis for the imposition of civil liability absent the *actual commission* of some *independently recognized tort*; and when such separate tort has been committed, it is *that tort*, and not the fact of combination, which is the foundation of the civil liability. Garing v. Fraser, 76 Me. 37 (1884), Franklin v. Erickson, 128 Me. 181, 146 A. 437 (1929).[4]

Thus, if the complaint at issue is to be upheld as stating a claim upon which relief can be granted, it must be on the ground that the complaint sufficiently alleges the actual commission of the separate and independent tort of defamation against the plaintiff.

Furthermore, if the complaint is to be held to state a cause of action for defamation, it must be defamation as *libel* rather than slander.

The matter which is here alleged to be defamatory is asserted to be defamatory on its face, requiring no resort to extrinsic circumstances to show its tendency to injure reputation—an accusation that plaintiff had "lied", on one occasion, at a meeting of the Planning Board of Kennebunk. This allegedly facial defamation, however, if it takes the form of slander only, cannot be regarded as the type of slander which is actionable without the pleading of special damages—(i. e., slander which conveys imputation of a crime, or a loathsome disease, or of matters affecting plaintiff in his business, trade, profession, office or calling, or of unchastity as to a woman). Hence, since the complaint fails to allege a claim for, or the circumstances of, special damages to the plaintiff,[5] it must be held inadequate if only the elements of slander appear and the essential elements of libel are lacking. Buck v. Hersey, 31 Me. 558 (1850), Niehoff v. Sahagian, 149 Me. 396, 103 A.2d 211 (1954).

We decide that the complaint states a claim upon which relief can be granted because it sufficiently alleges the ingredients of the tort of libel as having been committed by each defendant against the plaintiff.

---

4. We are aware that in particular extraordinary circumstances there has been recognized the existence of a separate self-sufficient and independent tort of "conspiracy", as a substantive basis of civil liability, when it is shown that combination and the force of numbers inject a special and unique factual overlay of some additional element worthy of recognition as a basis for the imposition of tort liability (such as, for example, coercion, undue influence or restraint of trade) and which would be absent were the conduct to be undertaken by one person acting alone. See: Weiner v. Lowenstein, 314 Mass. 642, 51 N.E.2d 241 (1943).

It is sufficient to state that the circumstances of the complaint before us involve no such factual allegations.

5. The allegation as to damages in the complaint, that plaintiff "has been brought into public shame and disgrace, . . . has been greatly injured in his personal and business reputation, [as distinguished from his *business as such*] and he has suffered great pain of body and of mind, . . . " fails as an averment of special damages in the sense intended by the law when special damage is held to be necessary to make defamation by slander actionable. Special damages in this sense are those which are distinct from the general damage to reputation and feelings presumed to exist without need of proof in those situations, for example, in which the utterance is defamatory on its face and is made in a form which is treated as libel (rather than slander). See: Powers v. Durgin-Snow Publishing Co., Inc., 154 Me. 108, 144 A.2d 294 (1958) in which this Court, at least by implication, indicated that the allegations

" . . . defendant has greatly injured the Plaintiff in his good name and reputation, has deprived him of public confidence, and exposed him and his family to public hatred, contempt and ridicule, and the Plaintiff has suffered great pain and distress of body and mind, has been shunned by many of his former acquaintances," (as set out at pages 109, 110, 144 A.2d at page 295) are allegations of legally presumed general damages rather than of special damages.

■ There are adequate allegations that the oral statements made at the meeting of the Board of Selectmen of the Town of Kennebunk, by which plaintiff was accused of having "lied" to the Town Manager at a prior recent meeting of the Kennebunk Planning Board, had been incorporated as part of the written minutes of the meeting of the Board of Selectmen. Once placed in *written* form, the accusation, alleged to be false, becomes libel rather than slander if it is defamatory and is published.

Even though the accusation falls short of attributing to the plaintiff the character trait of being a "liar", it is, nevertheless, fairly to be regarded as facially defamatory. An accusation that plaintiff had "lied", although upon a single occasion, at a public meeting to a public official, if believed, has capability [6] to deprive the plaintiff of "the benefits of public confidence and social intercourse" *or,* alternatively, to expose him to public hatred *or* to public contempt *or* to public ridicule. Tillson v. Robbins, 68 Me. 295 (1878); Brown v. Guy Gannett Publishing Co., 147 Me. 3, 82 A.2d 797 (1951); and Powers v. Durgin-Snow Publishing Co., Inc., 154 Me. 108, 144 A.2d 294 (1958).

The essential element of publication adequately appears. The complaint alleges that the defendant, Brown, "supplied" the written minutes to Mrs. Cashen, a news reporter of the Biddeford-Saco Journal and that they were used at Mrs. Cashen's home for the writing of the article which appeared in the Biddeford-Saco Journal on September 27, 1968 the day after the meeting of the Board of Selectmen.[7]

■ At this juncture, the allegations of the complaint that the defendants

"have conspired, since March 3, 1968, to maliciously defame and libel the plaintiff"

and that the supplying by defendant, Brown, of the written minutes to Mrs. Cashen was

"in furtherence (sic) of the conspiracy to defame and libel the plaintiff"

become functionally significant. Although, as above decided, Maine law generally denies that there is a separate and independent tort of "civil conspiracy", allegations of concerted action do operate to assist in the promulgation of an actionable claim that the tort of libel having been allegedly committed, all of the named defendants averred to have acted in combination in relation to the libel are vicariously liable to plaintiff for its commission.

As is said in Garing v. Fraser, supra:

"To charge all of the defendants, joint action must be proved, and the allegation of a conspiracy may be a proper mode of alleging it; . . .." (76 Me. p. 41)

The same principle is stated more extensively in Prosser, Torts, 3rd Ed. p. 259:

"All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it

---

6. "Capability" is here used in the sense that a factfinder would not be irrational were he to conclude that the language has a natural and usual tendency to produce the effect, which is under discussion, upon an adequately recognizable segment of reasonable persons in our society. Fahy v. Melrose Free Press, Inc., 298 Mass. 267, 10 N.E.2d 187 (1937); Meyerson v. Hurlbut, 68 App.D.C. 360, 98 F.2d 232, 118 A.L.R. 313, cert. den. 305 U.S. 610, 59 S.Ct. 69, 83 L.Ed. 388 (1938).

7. Because of the complaint's inclusion of this allegation relating to publication of the written minutes of the meeting, we find it unnecessary to decide whether the supplying of the "tape recording" of the proceedings of the meeting would constitute libel rather than slander, insofar as a tape recording, even though it retains the words as being orally stated, tends to fix them in a permanent form capable of wide dissemination. See: Tillson v. Robbins, supra, 68 Me. at p. 298. Cf. Niehoff v. Congress Square Hotel Company, 149 Me. 412, 103 A.2d 219 (1954).

by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him."

\* \* \* \* \* \*

"It is in connection with *such vicarious liability* that the word conspiracy is often used. The original writ of conspiracy was employed only in the case of combinations of two or more persons to abuse legal procedure, and was the forerunner of the action for malicious prosecution. This was replaced at a later date by an action on the case in the nature of conspiracy, and the word gradually came to be used *to extend liability in tort*, as well as crime, *beyond the active wrongdoer to those who have merely planned, assisted or encouraged his acts.*" (p. 260) (emphasis supplied)

■ Thus, the allegations of the existence of a "conspiracy", and of acts done in furtherance of it, serve to make the claim of a libel committed by one of the defendants (Brown) a sufficient claim of liability for the entire damage as legally attributable to each of the other defendants. Franklin v. Erickson, supra; Weiner v. Lowenstein, 314 Mass. 642, 51 N.E.2d 241, 243 (1943). Cf. Currier v. Swan, 63 Me. 323 (1874) and Hincks Coal Company v. Milan and Toole, 135 Me. 203, 193 A. 243 (1937).

The allegations that defendants had "conspired" "maliciously" to defame and libel the plaintiff, and that the publication by defendant, Brown, was in furtherance of the conspiracy, are operatively significant in another aspect.

Defendants have argued that (1) there is a qualified privilege protecting any person who accurately publishes a report of such proceedings as had actually transpired at a public meeting of a Board of Selectmen, and (2) even though qualified privilege is, ordinarily, an affirmative defense to a complaint for defamation, Boulet et al. v. Beals, 158 Me. 53, 177 A.2d 665 (1962), it

may nevertheless be invoked as the ground for dismissal of a complaint which contains within its own confines allegations of sufficient facts to show the existence and applicability of a qualified privilege.

It is in respect to this reliance by defendants upon the principle of qualified privilege, as shown by the face of the complaint, that the allegations of a "malicious" conspiracy and of publication of libelous matter in furtherance of the conspiracy have material impact.

These allegations are fairly to be regarded as charges of actual malice by the defendants toward the plaintiff, malice in fact consisting of a planned purpose and motivation to cause injury to the reputation of the plaintiff.

■ A qualified privilege is dissipated as a protection to one who, in exercising it, acts with malice in fact—an actual purpose or design to cause injury to the plaintiff. Boulet v. Beals, supra, and cases therein cited.

■ By reason, therefore, of the allegations that there was a continuing combination, and concerted planning by the defendants the purpose of which was "maliciously" to injure the reputation of the plaintiff, there is enough in the complaint to charge as to each of the defendants—including the defendant, Brown, who published in furtherance of the "conspiracy"—actual malice, thereby to prevent the doctrine of qualified privilege from defeating the complaint on its face.

Defendants have maintained, additionally, that the complaint fails to state a cause of action because it discloses on its face an "immunity" for the defamatory publications alleged insofar as it avers that the defendant, Dulac, made the original accusation that plaintiff had "lied" while Dulac was a participant in the proceedings of a public body performing functions legislative in nature—the public meeting of the Board of Selectmen of the Town of Kennebunk.

The totality of the complaint reveals, however, that this contention of defendants is without benefit to them in their efforts to achieve a dismissal of the complaint.

■ First, the libel of the plaintiff (which the complaint may be deemed adequately to allege) is predicated not upon the utterance as made by the defendant, Dulac, but upon the conduct of the defendant, Brown, in publishing the written record of the meeting after the meeting of the Board of Selectmen had terminated. Any protection conceivably afforded to the defendant, Dulac, for his statements made during the meeting fails to carry over, as such, to cover this independent publication by the defendant, Brown, outside the meeting.

■ Second, the "immunity" which attaches to a person who makes utterances as part of the proceedings of a subordinate body such as a Town Meeting or a Municipal Council or a Board of Selectmen—which is not a body endowed with sovereignty, as is a Legislature, even though it might perform functions which savor of the legislative process—is the protection afforded by a qualified privilege, Bradford v. Clark, 90 Me. 298, 38 A. 229 (1897), (rather than the absolute immunity which is afforded to a member of a Legislature who makes statements during the course of the proceedings of the Legislature).[8]

■ To the extent, therefore, that defendant, Dulac, is alleged to have levelled his accusation against the plaintiff as a "malicious" accusation made while Dulac was participating as a member of a continuing conspiracy the actual purpose of which is charged to be to injure plaintiff in his reputation, the complaint sufficiently alleges such malice in fact as negatives the applicability of a conditional privilege to protect even the origins of the defamatory accusation against plaintiff.

The complaint alleges a claim for the tort of libel for which each of the named defendants can be held legally responsible. It, therefore, states a claim upon which relief can be granted against each defendant.

The entry is:

Appeal sustained.

8. The absolute immunity recognized by Richards v. Ellis, Me., 233 A.2d 37 (1967) and Rodway v. Wiswall, Me., 267 A.2d 374 (1970) for *decisions quasi-judicial* in nature made by public authorities in the exercise of their lawfully conferred functions is inapplicable to defamatory utterances made or published by any member of a subordinate body when (and regardless that) a power legislative in nature might be in process of being exercised.