STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
DOCKET NO. BCD-CV-2019-54

MERIDIAN MEDICAL SYSTEMS, LLC )
and KENNETH L. CARR, in his Capacity )
as Assignee of Claims of and from the )
Chapter 7 Estate of Debtor MERIDIAN )
MEDICAL SYSTEMS, LLC, )
 )
       Plaintiffs, )
v. )
 )
EPIX THERAPEUTICS, INC. f/k/a )
"Advanced Cardiac Therapeutics, Inc.", )
MEDTRONIC, INC., )
OLIVER SMITH, and )
NEW ENTERPRISE ASSOCIATES, INC., )
 )
       Defendants )
 )

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**

Before the Court are Defendants' Motions to Dismiss the First Amended Complaint. Plaintiffs assert three claims in their Complaint: Count I, Aiding and Abetting a Breach of Fiduciary Duty; Count II, Tortious Interference; and Count III, Conspiracy. In response, Defendants contend that all of Plaintiff Carr's claims fail as a matter of law. The Court grants Defendants' motions to dismiss on all counts.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902

1

A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id*. Maine is a notice pleading state, and the notice pleading standard is forgiving. The complaint need only "give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief. . ." *Howe v. MMG Ins. Co.,* 2014 ME 78, ¶ 9, 95 A.3d 79. "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to de novo appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## FACTS

For the purpose of Defendants' motions to dismiss, the Court considers the following facts as if they are admitted, and in the light most favorable to Plaintiff:

Meridian Medical Systems ("MMS") was founded in 2001 by Kenneth Carr ("Carr") to develop microwave technologies aimed at solving certain cardiac health matters, namely cardiac arrhythmia. Later, in 2007, Carr co-founded Advanced Cardiac Therapeutics, Inc. ("ACT"). Eventually Carr's son, Jeff Carr, began working at MMS in 2009, and became President of the company in 2010. Robert Allison ("Allison") also joined the company, becoming a member of MMS in 2011.

By 2013, ACT was functioning as a pre-market startup developing cardiac ablation systems, and was backed by private equity.[1] At some point in 2013, Plaintiff alleges ACT began plotting to corrupt certain fiduciaries of MMS, namely Jeff Carr and Allison. Plaintiff further

---

[1] Cardiac ablation systems are designed to treat cardiac arrhythmia by destroying excess tissue, and/or implanting defibrillators and drugs. MMS and ACT aimed to reduce the risk of error in such procedures by utilizing microwave technology to precisely measure the temperature of targeted tissue, and determine how much tissue should be treated. According to Plaintiff, by 2013 the global market for such technology had reached approximately $3 billion, and early stage companies in the field had received payments in excess of $90 million to merge with larger medical device companies.

asserts that in connection with this plot, and for the purpose of building direct relationships with ACT, Jeff Carr and Allison ousted Kenneth Carr, the then-Chairman and CEO of MMS, on June 10, 2013. Further, Plaintiff asserts that ACT negotiated personal deals involving direct financial incentives with Jeff Carr and Allison, attempting to align them with ACT while compromising the interests of MMS. Plaintiff also asserts that Defendant- New Enterprise Associates ("NEA") had direct regular contact with Jeff Carr and Allison, focusing on how to align their personal interests with those of NEA and ACT at the expense of MMS and its technology, prior to coming into control of ACT in or about April, 2014. Upon gaining control of ACT, Plaintiff contends that NEA adopted ACT's prior corruption of Jeff Carr and Allison, and then used ACT to further exploit MMS.

As a result of NEA and ACT's corrupting influence, manifesting itself in the form of personal *quid pro quo* value, Jeff Carr and Allison breached their fiduciary duties owed to MMS. The conduct of Jeff Carr and Allison's alleged breach includes surrendering MMS' intellectual property, and compromising valuable trade secrets and patent rights to ACT, and by extension NEA. At the time Jeff Carr and Allison were engaging in conduct harmful to MMS, and arguably breaching their fiduciary duty, they hired Defendant- Oliver Smith ("Smith"), a close friend of Jeff Carr. Plaintiff asserts that Smith negotiated and worked with ACT and NEA to obtain the previously detailed *quid pro quo,* consulting agreements in exchange for the surrender of MMS's technology and assets, on behalf of Jeff Carr and Allison. Smith negotiated the deal such that they received compensation disproportionate to what they would have received as members of MMS, at the expense of MMS and other constituents.

At the same time, NEA was planning to sell another of their portfolio companies in the ablation catheter field, Topera, to Abbott Laboratories, and planned to include ACT (and by

3

extension MMS's technology) in the transaction to "sweeten the deal." As a result of the parties' negotiations, Abbott purchased a Warrant from ACT, promising Abbott certain exclusive rights to purchase ACT stock. Plaintiff asserts that the Warrant with Abbott Laboratories locked up ACT over the next three years, giving Abbott access to proprietary information, and devaluing MMS's intellectual property, without providing compensation. Meanwhile, other highly lucrative deals were on the table, including an offer from Medtronic. Due to the devaluation of its core intellectual property, Plaintiff states that MMS was forced to file for bankruptcy, a year after the transaction with Abbott closed. However, while NEA enjoyed the benefits of selling Topera to Abbott, the deal including ACT fell apart. Eventually, NEA sold ACT to Medtronic in a highly lucrative transaction, but by this time MMS was already bankrupt.

MMS eventually brought claims against Ken Carr in the Maine Superior Court (the "Prior Maine Action"), and in response Carr, in his individual capacity, asserted counterclaims and third-party claims relating to his ouster from and unpaid loans to MMS. None of the Defendants in this case were parties to the Prior Maine Action. On or about April 11, 2019, Carr entered into a settlement agreement (the "Maine Settlement Agreement") with Jeff Carr and Allison. Pursuant to the Maine Settlement Agreement, Carr acquired exclusive ownership of MMS. Although Carr settled claims with Jeff Carr and Allison in his individual capacity, the Maine Settlement Agreement did not release them from liability in future actions brought by MMS.

On May 13, 2019, the Bankruptcy Court entered a Sale Order approving the sale of certain interests from MMS's bankruptcy estate. Said interests, sold by the Chapter 7 Trustee, were described as follows:

> Any and all claims and causes of action held by the Debtor and the Debtor's bankruptcy estate that arose before the Debtor's bankruptcy filing (the "Assigned Claims") on

4

September 11, 2015 (the "Petition Date") . . . the Assigned Claims shall include without limitation, all claims and causes of action held by the Debtor that arose prior to the Petition Date against the following persons and entities. . .Advanced Therapeutics, Inc., Abbott Laboratories, New Enterprise Associates. . . and Oliver Smith.

Public Decl. Ex. 1 at pp. 1-2. It follows, Carr filed the First Amended Complaint with the Maine Superior Court on October 1, 2019.

## DISCUSSION

As an initial matter, Defendants assert MMS lacks standing, and thus must be dismissed as Plaintiff in this suit. The Court agrees.

Upon commencement of their Chapter 7 bankruptcy case, MMS ceased all operations of its business and created the Bankruptcy Estate. When the Bankruptcy Estate was created, MMS surrendered "all legal and equitable interests." 11 U.S.C. § 541(a)(1). Thereafter, the Chapter 7 Trustee became the sole representative of the estate, charged with managing and administering all of the estate's assests, including filing suit in the debtor's name. 11 U.S.C. § 323(a); *see Commodity Futures Tranding Comm'n v. Weintraub,* 471 U.S. 343, 352-53 (1985). When Carr purchased claims from the Chapter 7 Trustee, the transaction transferred *all* right, title and interest in and to these claims to Carr:

> The transfer of the Assigned Claims to the Assignee [Carr] pursuant to the Claims Purchase Agreement constitute a legal, valid, and effective transfer of the Assigned Claims, and shall vest the Assignee [Carr] with all right, title, and interest of the Debtor [MMS] and the Bankruptcy Estate in and to the Assigned Claims free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever.

Public Decl., Ex. 1 at p. 5, ¶ 6. Because Carr took assignment of the estate's, and by extension MMS's, claims against the parties listed in the Sale Order, MMS lacks standing to assert these claims. However, Carr argues the contrary.

Carr contends that because the Bankruptcy Court abandoned MMS's claims against other members (not the defendants subject to the Sale Order), MMS therefore has standing in this action. When a Chapter 7 Trustee abandons claims of the Debtor, these claims are not considered assets of the Chapter 7 Bankruptcy. 11 U.S.C. § 554. Once claims are abandoned, the Debtor is free to commence proceedings on their own behalf to enforce those claims. However, the claims abandoned by the Chapter 7 Trustee, and cited by Carr are not the same claims at issue in this matter. MMS's claims against the defendants were not abandoned. Instead, "all right, title, and interest" to those claims was assigned to Carr. Therefore, the assigned claims are not subject to the same treatment as those abandoned by the Chapter 7 Trustee.

Additonally, Carr contends that Defendants overstate applicable provisions of the Bankruptcy Code, while failing to acknowledge certain nuances found in §§ 348, 541, and 554 concerning "conversion of cases from Chapter 11 to 7, property of the bankruptcy estate, and past and developing abandonment of property and post-petition claims." Unfortunately, Carr fails to articulate what it is about those provisions he is arguing, and why the Court should ignore the plain language of the Sale Order issued by the Bankruptcy Court. Accordingly, the Court finds that MMS lacks standing to act as Plaintiff in this matter.[2]

## Count I: Aiding and Abetting Breach of Fiduciary Duty

In Count I of Carr's complaint, he asserts that NEA, ACT, Medtronic, and Oliver Smith all aided and abetted breaches of fiduciary duty committed by Jeff Carr and Robert Allison.

---

[2] Carr also contends that the Court may avoid addressing standing in this matter because 1) Carr himself has standing to bring the claims in his capacity as assignee, 2) the interests of MMS and Carr are aligned, and 3) the determination of standing is unlikely to have any substantial impact on the litigation of this case. However, because the Court has already determined MMS lacks standing, the Court dismisses all claims as to MMS in the interest of efficiency.

Specifically, Carr contends that, by engaging in one form or another with the negotiation of corrupting consulting agreements, the Defendants aimed to align their interests with Jeff Carr and Robert Allison, aiding their breaches of fiduciary duty. To maintain a claim for aiding and abetting a breach of fiduciary duty against Defendants, Carr must establish both an underlying breach of fiduciary duty, and that liability attaches for aiding and abetting that breach of fiduciary duty.

Defendants first point to the Prior Maine Action, in which Carr granted general releases to Jeff Carr and Allison "from and against any and all claims and causes of action, of any kind, nature or type", thus prohibiting Carr from bringing future claims for breach of fiduciary duty against them. As a result of settling of the Prior Maine Action and the resulting release, Defendants argue that any breach of fiduciary claim brought by Carr would be precluded even if adequately pled.

The Court finds Defendant's argument unpersuasive. In the Prior Maine Action, Carr was a defendant, counterclaim-plaintiff, and third-party plaintiff in his individual capacity. A party's involvement in two actions in different capacities does not satisfy the privity requirement for the purposes of claim preclusion under Maine law. *See Brown v. Osier,* 628 A.2d 125, 128 (Me. 1993); *Roy v. City of Augusta, Maine,* 712 F.2d 1517, 1522 (1st Cir. 1983). Thus, despite granting a general release from liability to Jeff Carr and Allison in his individual capacity, Carr is not precluded from asserting said breach of fiduciary duty claim in his capacity as assignee of MMS's claims.

Nontheless, Carr fails to allege sufficient facts to assert a claim for breach of fiduciary duty against Jeff Carr and Allison. In summary, the facts provided in the complaint allege that Jeff Carr and Allison improperly "ousted" Carr from his role at MMS, and that this "ouster" was

committed so that Jeff Carr and Allison could negotiate consulting agreements with ACT or otherwise "exploit MMS and its technology to their personal benefit." Ousting Carr from his role in MMS, and allegedly negotiating personal consulting agreements, without more, fails to satisfy a claim for breach of fiduciary duty.

Furthermore, even were Carr to establish a breach of fiduciary duty, he must also establish that Defendants aided and abetted that breach. A claim for aiding and abetting requires that a Defendant:

(1) committed a tortious act in concert with another or pursuant to a common design with the primary tortfeasor; (2) knew that the primary tortfeasor's conduct constitutes a breach of duty and gives substantial assistance or encouragement; or (3) gave substantial assistance to the primary tortfeasor in accomplishing a tortious result and the defendant's own conduct, separately considered, constitutes a breach of duty to another.

Restatement (Second) of Torts § 876. In Maine, the cause of action for aiding and abetting tracks the three prongs laid out in Section 876 of Restatement (Second) of Torts. The Complaint fails to establish any of these three prongs.

First, the Amended Complaint fails to satisfy the first prong of Section 876 because it does not plead facts showing that any of the defendants acted in concert or common design with Jeff Carr or Allison. In order for parties to be acting in concert, they must cooperate in a particular line of conduct, or to accomplish a particular result. Restatement (Second) of Torts § 876, cmt. a. Likewise, it is essential that the conduct of the actor be in itself tortious. *Id.* at cmt. c. Here, the Amended Complaint does not allege that any of the conduct that NEA, ACT, Medtronic, or Oliver Smith engaged in was subject to an agreement, or by itself, tortious.

Second, the Amended Complaint fails under the second prong because it is devoid of sufficient facts to conclude that any of the Defendants provided substantial assistance or encouragement to Jeff Carr and Allison. Instead, the Amended Complaint merely concludes, that without factual support, that the negotiation of consulting agreements, in and of itself, qualifies as sufficient encouragement to corrupt Jeff Carr and Allison, and to lead them to oust Carr from MMS and retain employment with ACT. Finally, the Amended Complaint fails under the third prong because it has not demonstrated how any of the Defendants' conduct, separately considered, constitutes a breach of duty to Carr. Accordingly, Count I of Carr's complaint for Aiding and Abetting Breach of Fiduciary Duty is dismissed with regard to all defendants.

**Count II: Tortious Interference**

Count II of Carr's complaint alleges a claim for tortious interference. Under Maine law, "interference with an advantageous relationship requires the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." Barnes v. Zappia, 658 A.2d 1086, 1090 (Me. 1995). Essentially, Carr contends that MMS enjoyed a reasonable expectation of economic advantage based both on the Warrant with Abbott Laboratories, and the potential deals it could have sought were ACT not "locked up" and MMS's intellectual property not devalued. However, the Amended Complaint does not allege that MMS was a party to the Warrant, nor was it a third-party beneficiary of it. Likewise, the Amended Complaint fails to articulate a cognizable prospective economic advantage. Rather, Carr's complaint points to a series of negotiations and transactions he feels MMS was locked out of. These allegations alone are insufficient to establish the existence of an advantageous relationship.

Further, Carr fails to allege facts sufficient to plead either fraud, or intimidation as required by the second element of tortious interference. First, to establish that a defendant engaged in tortious interference with a prospective economic advantage through fraud, the plaintiff must plead with particularity the elements of fraud:

> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard for whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and act upon it to the damage of the plaintiff.

*Rutland v. Mullen*, 2002 ME 98, ¶ 14, 798 A.2d 1104. The Amended Complaint is completely devoid of any allegations that Defendants made any fraudulent statements. Thus, the Court must then evaluate whether the complaint alleges tortious interference by intimidation. According to Maine law, tortious interference by intimidation involves unlawful coercion or extortion. *Id.* at ¶ 16. However, the mere assertion that Defendants, by negotiating or offering consulting agreements with Jeff Carr and Allison for the purpose of aligning economic interests fails to rise to the level of unlawful coercion, and is certainly not extortion. Accordingly, the Court dismisses Count II of the Amended Complaint as to all defendants.

**Count III: Conspiracy**

Finally, Count III of Carr's complaint, which alleges a conspiracy to "exploit breaches of fiduciary duties by Jeff Carr and Allison", also fails. Under Maine law, "conspiracy fails as the basis for the imposition of civil liability absent the actual commission of some independently recognized tort." *Cohen v. Bowdoin,* 288 A.2d 106, 110 (Me. 1972). "Thus, if the complaint at issue is to be upheld as stating a claim upon which relief can be granted, it ust be on the ground that the complaint sufficiently alleges the actual commission of the separate and independent tort. . . against the plaintiff." *Id.* The Court previously acknowledged that Carr failed to

10

sufficiently state an independent claim for breach of fiduciary duty. Therefore, the Court dismisses Count III as to all defendants.

## Conclusion

For the reasons set forth above, the Court dismisses the First Amended Complaint in its entirety.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.


**Dated:__5/25/2020_____**        _____/S_____

                                        **Justice M. Michaela Murphy**
                                        **Business and Consumer Court**

**Meridian Medical Systems, LLC
and Kenneth L.Carr**

**v.**

**EPIX Therapeutics, Inc., et al.**

| | |
|---|---|
| *Meridian Medical Systems, LLC and Kenneth L.Carr* | Randy Creswell, Esq.<br>**Creswell Law**<br>183 Middle St, Suite 100<br>Portland, ME 04101 |
| *EPIX Therapeutics, Inc., Medtronic, Inc,* | Clifford Ruprecht, Esq.<br>**Roach Hewitt**<br>7 Ocean Ave<br>Portland, ME 04103 |